IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO: SAG-23-0123 |
| CHARLES A. JENKINS, | * | |
| Defendant | * | |

…ooo0ooo…

## DEFENDANT JENKINS' MOTION TO DISMISS

Defendant Charles A. Jenkins, by and through undersigned counsel, hereby moves this Honorable Court to dismiss the Indictment against Defendant Jenkins. In support thereof, Defendant Jenkins states as follows:

## PRELIMINARY STATEMENT

The defendant, Sheriff Charles Jenkins has been indicted in five counts of a six-count Indictment which alleges a conspiracy and four additional substantive counts related to Sheriff Jenkins' signing law letters, ultimately used by The Machine Gun Nest (TMGN) to obtain machineguns for rental by the customers at TMGN. The Indictment was returned on April 5, 2023. Sheriff Jenkins became aware of the investigation almost a year earlier on May 25, 2022, when several ATF agents showed up at Jenkin's office, and demanded to see the Sheriff. They spoke with the Sheriff for approximately one hour and left. Unbeknownst to Jenkins, the interview was recorded.[1] Sheriff Jenkins answered all their questions without hesitation. Any honest assessment of this interview will reflect that Sheriff Jenkins had absolutely nothing to

---

[1] The defendant can provide a copy of this recording and a draft transcript to the Court if the Court wants to hear this recording while considering this motion. The defendant will be prepared to play the recording at the hearing currently set for July 18, 2023.

hide and was genuinely surprised by the suggestion that he had done something improper, much less illegal.  Sheriff Jenkins has never denied signing the law letters, but maintains, and will maintain through trial that he never knowingly and willfully entered into any conspiracy; that there was no conspiracy; that he never intended to impede any government functions; and that he never intended to deceive or cheat anyone.  That he was genuinely surprised during the interview that anyone thought he had done something wrong is crystal clear to the listener.  It is unmistakable proof that he *never knowingly* committed any crime.  The defense believes that the ATF/government had made up its mind that Sheriff Jenkins was guilty before they ever even spoke with him in May of 2022, because an honest assessment of the audio tape would give anyone reasonable doubt that he knowingly and willfully broke the law.  It is truly that clear and that simple.  The government has also conceded that Sheriff Jenkins received absolutely nothing in return for helping a local business which is what he has done for many businesses in the county, throughout his 17 years in office as the five times elected lead law enforcement officer in Frederick County.  Moreover, the dozens of persons interviewed by ATF following their interview with Sheriff Jenkins to a person with minor exception, all said the same thing.  **Sheriff Jenkins is an honest man.  He cares about his community and goes out of his way to assist local businesses in any way he can.  If he thought he was doing anything wrong, he would not have done it at all.**  Apparently, the government was tone deaf to their own witnesses, and proceeded with this prosecution.

## THIS PROSECUTION IS FUNDAMENTALLY UNFAIR

1. Defendant Jenkins moves this Honorable Court to dismiss the Indictment pending against him because, ***as applied to the facts of this case and the prosecution of Jenkins***, several statutes under which Jenkins was indicted are unconstitutionally vague.  A criminal statute is

unconstitutionally vague in violation of due process if "it fails to give ordinary people fair notice" of what is proscribed; [or], if it is "so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015). The Court said,

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warnings. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

Grayned v. City of Rockford, 408 U.S. 104, 108–09 (1972).

2. The crux of the government's accusation is that Krop and Jenkins conspired to obtain post-86 machineguns through fraudulent letters to ATF. The evidence will show that defendant Krop, a Federal Firearms Licensee (FFL), had the requisite licensure that would allow him to manufacture machineguns. To manufacture machineguns, however, would cost Krop more than if he just obtained law letters from a law enforcement agency. In fact, manufacturing these guns would be substantially more expensive. Krop therefore initiated contact with Sheriff Jenkins. Krop or his staff drafted the law letters and emailed them to Ms. Comert, Sheriff Jenkins' assistant. Ms. Comert then put the law letter on Frederick County Sheriff's Office letterhead for the Sheriff's signature. Krop decided which guns to request in the law letters. Krop decided how many guns to request in the law letters. Krop filed the law letter signed by Sheriff Jenkins along with the requisite forms with ATF for their review and approval. Krop or his staff have had contact with personnel from ATF, including when ATF asked Krop to edit one of the law letters. On that occasion, Krop had Ms. Comert resubmit the corrected law letter to Jenkins.

3

Jenkins had no contact with ATF in this process. Krop received the firearms. Unless the government has evidence yet to be disclosed on this point, there is no evidence that Jenkins was ever advised when or if the machineguns ever showed up at TMGN. Krop received Open Letters from ATF instructing the specific requirements of law letters, as the practice of ATF has been to issue Open Letters to FFLs to advise the license holders of the requirements needed to obtain post-86 machineguns. There were at least three Open Letters to FFLs from ATF in the past two decades. There is no evidence ATF issued similar letters to guide and inform law enforcement officials who are authoring and/or signing the law letters. Krop rented out the machineguns and made money, which is alleged to have been his motive. There is no motive by Jenkins to have signed these letters, other than to help a local business. To be clear, renting out firearms for profit is perfectly legal. Notwithstanding the issue of how Krop obtained the machineguns in the Indictment, his possession of them is legal.

3. The rub is that when the machineguns were received at TMGN, it is alleged that there were no demonstrations of these machineguns: Thus, the allegation goes, the letters were fraudulent. In other words, but for a 10-minute demonstration, Sheriff Jenkins with a life-long devotion to public service will be branded a felon. It defies logic to think that if these two guys were really in cahoots, and Jenkins knowingly and willfully conspired so that Krop could get these guns, that they would not have just done a 10-minute demonstration. There is no statute or regulation that requires a demonstration to take place. There is no statute or regulation that defines what constitutes a "demonstration." Nor is there any statute or regulation that provides for the period of time within which these demonstrations must be held. In other words, there is no sunset on this process. If evidence is presented to show that Sheriff Jenkins was in TMGN from time to time on official business and observed the machineguns on display at the business,

4

this could satisfy the requirement of a "demonstration." If evidence is presented to show that several hundred members of law enforcement – including employees of the Frederick County Sheriff's Office - went to TMGN and rented the machineguns, this could also satisfy the requirement of "demonstration." Again, the government has not produced any evidence to show that Sheriff Jenkins was ever advised that the machineguns had arrived. If Jenkins and Krop were truly co-conspirators, Krop's first phone call when these machines guns arrived at TMGN, would be to Jenkins. That never happened. This prosecution therefore assumes the burden was on Sheriff Jenkins to follow up with Krop, the FFL, instead of the other way around. How can this be fair? Why is it not the burden of ATF – who approved TMGN receiving the firearms – to document the demonstrations? This also begs the question, when is it too late to do the demonstration?

    4.   Defendant Jenkins has been indicted for a violation of 18 U.S.C. § 371, Conspiracy to defraud the United States. The Indictment includes a conspiracy count alleging that the defendants conspired to violate several different statutes. These specific allegations then became additional counts in the Indictment. Sheriff Jenkins is charged in Counts 1 through 5. Krop is charged in Counts 1 through 6. Specifically, it is alleged that the defendants violated § 371 by violating:

- 18 U.S.C. § 922(a)(6) which provides: *It shall be unlawful for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition the provisions of this chapter.* [*See* Indictment, ¶12(b).]

- 18 U.S.C. § 924(a)(1)(A) which provides: *Except as otherwise provided in this subsection, subsection (b), (c), (f), or (p) of this section, or in section 929, whoever— (A) knowingly makes any false statement or representation with respect to the information*

5

*required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter … shall be fined under this title, imprisoned not more than five years, or both.* [*See* Indictment, ¶12(c).]

- 18 U.S.C. § 1001(a)(2) which provides: *Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully— makes any materially false, fictitious, or fraudulent statement or representation shall be fined under this title, imprisoned not more than 5 years or both.* [*See* Indictment, ¶12(d).]

- 18 U.S.C. § 922(o) which provides: Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun. (2) This subsection does not apply with respect to—(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof **or a State, or a department, agency, or political subdivision thereof;** or (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect. [Emphasis added.] [*See* Indictment, ¶12(e).]

5.  There is nothing in these statutes, specifically nothing in 18 U.S.C. § 922(o)(2), which describes or limits how a representative of "a department, agency, or political subdivision" of a State would specifically possess or transfer a machinegun pursuant to that exception.[2]

6.  The gravamen of this prosecution is the law letters.[3] The machineguns identified in this Indictment are all accounted for. In fact, they are in the government's custody following a search warrant executed at TMGN. No one was shot or killed with these guns. Moreover, it was not only not illegal for Krop to have them, but he could have legally manufactured them instead of obtaining them the way he did. The government's prosecution relies entirely on these

---

[2] In addition, this statute allows for "a department, agency, or political subdivision" of a State to transfer or possess these machineguns. Without being defined, one could interpret this to mean, that the county animal control agency, or the state department of assessments and taxation, or the local school board could meet this exception and possess machineguns.

[3] These are also known as "demo" letters, or "sales sample" letters, or "dealer sample" letters.

letters. If Sheriff Jenkins had not signed them, he would not be fighting for his reputation and his livelihood today.

      7. The Code of Federal Regulations is the codification of the general and permanent rules published in the Federal Register by the departments and agencies of the Federal Government. CFR § 479.104(a) *General*, repeats that a machinegun can be transferred to "a department, agency, or political subdivision" of a State. Subsection d. of that regulation explains:

> Subject to compliance with the provisions of this part, applications to transfer and register a machinegun manufactured or imported on or after May 19, 1986, to dealers qualified under this part will be approved if it is established **by specific information the expected governmental customers** who would require a demonstration of the weapon, information as to the availability of the machinegun to fill subsequent orders, and letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon. Applications to transfer more than one machinegun of a particular model to a dealer must also establish the dealer's 's need for the quantity of samples sought to be transferred. (Emphasis added.)

CFR § 479.105(d). Effective January 24, 2003. This regulation does not state how the law enforcement agency or the FFL would establish the specific information that is described in the regulation. It does not even say who should provide this information.

      8. To be helpful, ATF periodically issues "Open Letters" to Federal Firearms Licensees on topics related to their business. One such letter was specifically about law letters. It was issued on November 10, 1999 and revised on February 23, 2006. (*See*, Exhibit #1, *NFA 'Law Letter' Requirement*.) There is no indication who within ATF wrote this Open Letter. This one-page letter specifically addresses the requirements of a "law letter," and states that the NFA Branch will look for specific information in the law letter. It must be on the law enforcement agency's letterhead and signed by the head or someone with that delegated authority; dated

7

within one year of the date the application is made to the NFA; identify the particular machinegun being transferred; identify the agency's interest (for purchase or demonstration); and document if applicable the need for more than one machinegun of a particular model. *Id.* This Open Letter did not say when or even if a demonstration must take place. This Open Letter was also not disseminated to law enforcement. Not in 1999; and not in 2006.

9. In between writing and revising the 1999/2006 letter, ATF issued another open letter on July 30, 2002.[4] (*See,* Exhibit #2, *Open Letter to Federally Licensed Firearms Importers and Registered Importers of U.S. Munitions Import List Articles*.) Under the sub-heading of "Dealer Sales Samples" this letter advised that the requested transfer of the post-86 machinegun will be approved if the "**expected governmental customer**" requires a demonstration, that there is availability of the machinegun to fill subsequent orders, that the letter identify the particular model, and justify if more than one of the same model is requested. In a separate section entitled "Sales to Law Enforcement and Government Entities" ATF reiterates that the letter must be on letterhead or on a purchase order of the agency, must be recent, must be signed by the chief or appropriate delegate, and that the letter must "state that the firearms **are being purchased** for departmental inventory with either departmental funds or funds from individual officers who may be required to pay in whole or in part for their uniforms or equipment to carry out their official duties." Finally, that passage admonished: "Please be advised that close scrutiny will be applied to all such applications, this may include our personnel directly contacting the law enforcement agency." Not only did no personnel from ATF ever call or contact the Frederick

---

[4] This Open Letter from ATF says, "We hope you find this letter helpful in your business pursuits." It is signed by the Firearms, Explosives and Arson Services Division Chief, and it closes by saying, "Maintaining open lines of communication is vital to the successful future of ATF's partnership with the import community. The Firearms and Explosives Imports Branch is available to answer your questions about the issues addressed in this letter."

County Sheriff's Office about the law letters at issue, this 2002 Open Letter from ATF was not disseminated to law enforcement.

10. Also in 2002, ATF promulgated Rule 2002-5 that addressed the requirements for justifying an order for more than one sales sample of the same model. The Rule states:

> The conditions required to be established include (1) a showing of ***the expected government customers*** who would require a demonstration of the weapon; (2) information as to the availability of the machinegun to fill subsequent orders; and (3) letters from government entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon. The regulation further provides that applications to transfer more than one machinegun of a particular model must also establish the dealer's need for the quantity of sales sought to be transferred. [Emphasis added.]

27 CFR 179.105: Transfer and Possession of Machineguns, ATF Rule 2002-5. The one thing that never changed was that the law enforcement agency is expected to be a "customer."

11. This investigation into defendants Krop and Jenkins was initiated in February of 2022. On January 11, 2023, ATF issued its "*Open Letter to all Federal Firearms Licensees Regarding Machinegun Dealer Sales Sample Letters.*" (*See,* Exhibit #3.) This Open Letter was issued to FFLs by the Assistant Director of Enforcement Programs and Service. This four-page Open Letter is entirely and exclusively about the requirements of a "law letter" and what ATF will and will not accept. This is by far the most explicit and extensive pronouncement of the legal requirements for law letters. There is an in-depth description of what must be in each law letter. *Inter alia*, ATF specifically states,

> The law letter required by section 479.105(d) authorizes a qualified licensee to obtain a post-86 machinegun for demonstration to the requesting government entity **in anticipation of future sales.** [Emphasis added.]
>
> ****
>
> A licensee may not use a law letter as a method to enhance a personal collection or inventory of machineguns with assistance from a government entity.

9

> *****
>
> Examples of using a fraudulent letter to circumvent 922(o) may include … submitting a law letter when the licensee knows the government entity has no interest in the machinegun requests.
>
> *****
>
> Prior to approving either the application to transfer or application to import a post-86 machinegun as a sales sample, ATF needs to be satisfied that the accompanying law letter is a bona fide expression of the **government entity's interest in purchasing the machinegun requested.** [Emphasis added.]

*Id.* This Open Letter was sent to the nation's FFL's. It was not sent to law enforcement.

12. A review of the letters signed by Sheriff Jenkins adds to the outrageous unfairness of this prosecution. The law letters that are the subject of this prosecution are attached as Exhibit #4. There are five letters; the first four of which were approved by the ATF. These letters all fail to meet ATF's requirements requisite for approval. Not once did Sheriff Jenkins express any interest in purchasing any firearms. When evaluated against the January 11, 2023, Open Letter from ATF, these law letters were woefully insufficient. Despite repeated warnings to the contrary, however, ATF approved these letters again and again for over a decade. How was Jenkins to know that what he was doing was wrong? Was ATF complicit in the conspiracy when the agency approved these letters? How is this prosecution not fundamentally flawed and a violation of Sheriff's Jenkins right to know what was prohibited by law? Where is Due Process?

13. This 2023 Open Letter eerily speaks directly to the facts in this case. It seems the government is closing the barn door, but the horses are already out in the meadow. Federal Rule of Evidence, Rule 407, Subsequent Remedial Measures, provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, **control, or the feasibility of precautionary measures.** [Emphasis added.]

*Id.* ATF failed to send this critical information to law enforcement and failed to monitor the law letter process or enforce their own rules for decades.[5] Their Open Letter of 2023 proves that ATF knew they had a problem, and they knew they needed to fix it. To this day, the defense knows of no Open Letters that have at any time been issued by ATF to guide or admonish law enforcement officials who have the capacity to author and/or sign law letters. The defendant submits that ATF seeks to cover up their own negligence by prosecuting Sheriff Jenkins.

    14. In conclusion, it should be obvious that there has been confusion about these law letters for at least two decades. There is no information in Title 18 about how a state agency could obtain a machinegun. The relevant CFR merely refers to law enforcement purchasing machineguns as "the *expected governmental customers.*" It is not until ATF started issuing Open Letters to FFLs – **not to the law enforcement community** – that there was any detail or description of the requirements. And these requirements changed over time. Not entirely but incrementally. And the clearest expression of law letter requirements was issued on January 11, 2023, almost a full year after this investigation started. Not only is this *ex post facto*, but as to Sheriff Jenkins, there was absolutely **no** "reasonable opportunity to know what is prohibited." As applied to him, this prosecution is unconstitutional. ATF, hence, the government, does not come to this prosecution with clean hands. There is no justification for this prosecution.

---

[5] In the past year, several law enforcement officers across the country have been prosecuted for fraudulent law letters. But in those other cases, the FFL sold the machineguns for a ridiculous profit on the illegal market, and the law enforcement agent who wrote the letter, got a cut of the profits, clearly establishing a *quid pro quo*. During the May 25, 2022 interview of Sheriff Jenkins, the agents mentioned these cases to Jenkins. They also hinted that perhaps there was a payment of $1,000 to the Sheriff for each letter he signed, but there is no evidence to support this contention. The defense has no doubt that the agent thought that was what they would find from this investigation. They did not, and that should have been the end of it. This is a regulatory violation at best. It is the *quid pro quo* that is the ultimate proof of intent, of "knowingly and willfully" and that just does not exist in this case.

Fundamental fairness and Due Process are critical. The appearance of fairness and the appearance of Due Process are equally critical. For Americans to have faith in the fairness of our system of justice, this Indictment must be dismissed.

For all the reasons provided above, Sheriff Jenkins respectfully requests this Honorable Court dismiss the Indictment pending against him, with prejudice.

Respectfully submitted,

SILVERMAN/THOMPSON/SLUTKIN/WHITE

/s/Andrea L. Smith
By _____
Andrea L. Smith, Of Counsel
Federal Bar #: 00397
404 E. Pratt Street, Ninth Floor
Baltimore, Maryland 21201
Phone (410-385-2555)
Email: Asmith@silvermanthompson.com

ETHRIDGE, QUINN, KEMP, ROWEN
& HARTINGER

/s/Margaret
By_____
Margaret A. Teahan
Federal Bar #: 20364
100 N. Court Street
Frederick, Maryland 21701
(301) 698-8182

*Attorneys for Charles Austin Jenkins*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of July, 2023, a copy of the foregoing motion was filed via ECF causing copies to be sent to all parties of record.

_____/s/_____
Andrea L. Smith