IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO: SAG-23-0123 |
| CHARLES A. JENKINS, | * | |
| Defendant | * | |

…ooo0ooo…

**DEFENDANT'S REPLY TO GOVERNMENT'S
SUPPLEMENTAL OPPOSITION TO MOTION TO SEVER – BRUTON ISSUE**

Defendant Charles A. Jenkins, by and through undersigned counsel, hereby replies to the government's Supplemental Opposition, ECF No. 53, to defendant Jenkin's request for severance. In support thereof, Defendant Jenkins states as follows:

1. The defendant moved for severance for numerous reasons. (ECF 18.) These reasons included disparity of the evidence relative to the conduct and motives of each defendant, Jenkins and Krop; antagonistic defenses between these two defendants; and the legal issues created by admitting an hour-long recorded interview of Sheriff Jenkins. Both the government and the defendant intend to play all or some of this recording.

2. There also exists a recorded interview of defendant Krop. Needless to say, playing Krop's statement at a joint trial presents a *Bruton* issue for Sheriff Jenkins. *Bruton v. United States,* 391 U.S. 123 (1968). Playing Jenkin's statement at a joint trial presents a *Bruton* issue for defendant Krop. *Id*. The government has said they have no intention of playing Krop's statement at a joint trial. Consequently, they have removed Sheriff Jenkin's *Bruton* argument. As more fully described below, Sheriff Jenkins

nevertheless submits that severance is warranted in this case. Krop's severance argument remains at issue, and more directly relevant to Sheriff Jenkins' concerns, Jenkins submits that the entire statement is admissible without redaction. To redact the statement in order to preserve Krop's Sixth Amendment right to confrontation, is to deny Sheriff Jenkins critical evidence at his trial.

    3. The 61-minute recording is compelling. Sheriff Jenkins asserts that this recording – the entire recording, start to finish - is admissible evidence at his trial. Grounds for admission include its use as potential cross-examination of the ATF agents who interviewed Jenkins, [Rule 801(d)(1)(A), Fed R. Evid]; as a prior consistent statement by Jenkins, [Rule 801(d)(1)(B), *Id*.]; and, most significantly as material, substantive and compelling evidence of Jenkin's innocence. [Rules 401, 803(1) *Id*.] Rule 803(1) provides that an out of court statement is not excluded as hearsay when there is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." This recorded interview contains the "present sense impression" of Sheriff Jenkins – his state of mind - upon learning that the ATF agents standing in his office believe he had committed a crime. This is the moment Jenkins perceived the issue. His reaction *is* the evidence. At the heart of this severance request is the discussion – both the words and the non-verbal communication, the pauses, the tone of the conversation, the sentiments, and emotions - that occurred between Sheriff Jenkins and the three ATF agents that showed up unannounced on May 25, 2022, at his office demanding to see him. The parties to the conversation discussed co-defendant Krop's role in the alleged offenses. The agents were educating Sheriff Jenkins on the spot about

what Krop should have and should not have done, and why it was a crime. It is crystal clear that Jenkins had very little, if any, understanding of the legal significance of the letters at the center of this case. The agents all but said that Krop took advantage of Jenkins as unwitting. The agents also said that they thought that during this interview Jenkins was "not being dishonest or deceptive." [*See transcript of Jenkins interview, page 132, line 10;* previously provided.] This statement by the agents after spending an hour with Jenkins underscores the significance of this conversation to defending these allegations. It is the agents' assertions combined with Sheriff Jenkins' words, and his non-verbal reactions that not only create a *Bruton* problem if there were a joint trial of Krop and Jenkins, but also justify admitting the full statement without redaction.

      4. The government asserts that "[i]n reviewing the transcript, the Government believes that any *Bruton* issue can be addressed by appropriate redactions and limiting instructions." ECF #53, p 2. The government arrived at this conclusion after analyzing the Supreme Court's recent decision in *Samia v. United States,* 143 S.Ct. 2004 (2023). Initially, the defendant points out that "*reviewing the transcript*" is not the same as listening to the recording. It is **not** the transcript the defendant seeks to admit, it is the recording. The transcript is merely an aid. The government has not proffered how it would go about making redactions in this conversation. Federal Rule of Evidence 106 provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." In fairness to Sheriff Jenkins the entire recording must be played.

5. *Bruton* stands for the proposition that the Sixth Amendment right of confrontation is violated when the defendant is implicated in a statement by a non-testifying codefendant. The two defendants in *Bruton*, Bruton and Evans, were alleged to have committed a robbery – a "whodunnit." 391 U.S. 123 (1968).  Thereafter, in *Richardson v. Marsh*, 481 U.S. 200, 208 (1987), the Court distinguished between direct and indirect confessions, the latter being incriminating only after being linked with other trial evidence.  A limiting instruction was considered sufficient in that case.  In *Gray v. Maryland*, 523 U.S. 185, 194 (1998) the confession was considered to be more like *Bruton*, directly accusatory, and therefore the admission of a confession with only a blank space where the defendant's name would have appeared, along with a limiting instruction to the jury was not sufficient.

6. *Samia* merely restated the *Bruton* rule.  *Samia,* is not applicable to the present case at all and provides no support for the government.  Defendant Samia, along with two other co-defendants, Hunter and Stillwell, were charged with the commission of murder-for-hire.  Stillwell gave a post-arrest statement to law enforcement claiming to have been present during the murder but insisted that defendant Samia pulled the trigger. All three were tried together, and Stillwell did not testify.  The issue in *Samia*, was "who did it?"  Instead of telling the jury that Stillwell admitted to being there and said that Samia pulled the trigger; the DEA agent told the jury that Stillwell admitted to being there and said that "the other person" pulled the trigger.  The Supreme Court found this redaction, along with a limiting instruction, to be sufficient to protect defendant Samia. Part of the logic is because it did not directly implicate the defendant – it could not be

said that the statement left an inescapable conclusion that Stillwell was talking about Samia.  Only through the introduction of the rest of the evidence could the jury infer that the shooter was Samia.  Indirect implication is acceptable: Direct implication is not.  The Court did not alter the *Bruton* rule in *Samia*.  *Samia* was merely another case, analyzed against the legal framework announced by *Bruton*, and refined by *Richardson* and *Gray*.  *Samia* simply directs the trial court to make a case-by-case evaluation.  There is also no indication that Stillwell's confession was recorded.  It's not mentioned at all in *Samia* but there is no discussion by the Court about redacting a recording.  Therefore, the assumption is that it was written or oral.  Neither *Bruton*, *Richardson* nor *Gray* involved recorded statements.   In contrast, this case involves a recorded statement of Jenkins.  F.R.E. 106 is specifically implicated.  Moreover, in the present case there is no issue of "who did it?"  Jenkins has never denied taking the actions described in the indictment.

    7. The sole issue here is whether Sheriff Jenkins possessed the requisite *mens rea* to satisfy the criminal intent element in all five charges against him that the government **must** prove.  It is not that Krop is named during the discussion between Jenkins and the three ATF agents that is creating the *Bruton* issue, it is the discussion between the agents and Jenkins in its entirety, that is damaging to Krop.  The defendant submits that there is no redaction in this case that would simultaneously protect each defendant's rights.  It must be played in its entirety for the jury at Jenkins' trial, and the trials must be severed to protect Krop.

WHEREFORE, Sheriff Jenkins submits that severance is warranted. The Sheriff reasserts his severance arguments based upon disparity of evidence, motive, and antagonistic defenses as well as the grounds asserted herein based upon the conflict between Sheriff Jenkins right to present exculpatory evidence to a jury and Krop's right to confront the witnesses against him. Sheriff Jenkins respectfully asks this Court to sever the trials of defendants Jenkins and Krop.

Respectfully submitted,

SILVERMAN/THOMPSON/SLUTKIN/WHITE

/s/Andrea L. Smith
By _____
Andrea L. Smith, Of Counsel
Federal Bar #:  00397
404 E. Pratt Street, Ninth Floor
Baltimore, Maryland 21201
(410) 385-2555
Email:  Asmith@silvermanthompson.com

ETHRIDGE, QUINN, KEMP, ROWAN & HARTINGER

/s/Margaret A. Teahan

By_____
Margaret A. Teahan
Federal Bar #:  20364
100 N. Court Street
Frederick, Maryland 21701
(301) 698-8182
Email:  mat@eqlawyers.com

*Attorneys for Charles Austin Jenkins*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of August, 2023, a copy of the Defendant's Reply to Government's Supplemental Opposition to Motion to Sever – Bruton Issue, was filed via ECF causing copies to be sent to all parties of record.

/s/

_____

Andrea L. Smith