IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : CR No. 1:23-cr-00123-SAG |
| v. | : |
| ROBERT KROP, | : |
| Defendant. | : |

: : : : : : : : : : : :

**MR. KROP'S REPLY TO GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO MOTIONS TO SEVER - BRUTON ISSUE**

MAY IT PLEASE THE HONORABLE JUDGES OF THIS COURT. Defendant Robert Krop, by and through his undersigned attorneys, hereby replies to the government's Supplemental Opposition, ECF No. 53, to defendant Krop's request for severance and states as follows:

Defendant Krop incorporates and joins co-defendant Jenkins' motion and reply to sever as to its substantive and material arguments on the merits, while reserving without waiver all defenses at trial and at law, without joining co-defendant's antagonistic defenses. Furthermore, and in support of his motion to sever on the *Bruton v. United States*, 391 U.S. 123, 135-36 (1968) issue he raised in oral argument on July 18, 2023 before this Court,[1] Mr. Krop makes argument below.

I. **Under *Bruton*, the court is required to sever the defendants' trials where Mr. Krop is being openly and improperly blamed by the codefendant *and* the government.**

The government requested an additional two weeks to brief, under its due diligence, whether at least 22 oral references to Mr. Krop in codefendant Jenkins' interview (ECF 31, Ex. 4b) implicate *Bruton* v. *United States*, *supra*. Understanding it does, the government, citing

---

[1] As a matter of clarity for the record, it is Defendant Krop's position that during his oral argument, **he raised and reserved on the *Bruton* issue for his motion to sever, which he then argued as part of that later motion.** Upon questioning government's counsel, the Court then proceeded to grant the government's request for time to further brief the matter. There was not a *sua sponte* raising of this argument by the court (USA ECF 53, ¶ 1), but rather an inquiry to the government on the issue raised in argument.

1

*Richardson v. Marsh*, 481 U.S. 200, 207 (1987), states it plans to admit the same "properly redacted and coupled with limiting instructions." ECF 53, ¶ 1.  Ostensibly, the government likely wants to present to the jury an open conversation whereby – with nothing to hide – Sheriff Jenkins asked whether he should have signed law letters for Mr. Krop.  Not for "another person."

As argued and cited before this Court by Mr. Krop on July 18, 2023, redactions in this case will not fulfill the legal requirements of *Bruton* v. *United States* or *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), as the non-testifying codefendant's statements implicating Mr. Krop violate the Sixth Amendment and Mr. Krop's rights thereunder. ([*Richardson*] held that the Confrontation Clause is violated by the admission of a non-testifying codefendant's confession with "***any reference to his or her existence***.")(emphasis added).  No redactions can suffice to protect his very *existence* in the facial statements of codefendant.  *Id.*

Here, Mr. Krop's appearance in Court with the Sheriff in front of a jury while the prosecution and the Sheriff are playing the Sheriff's audio statements and providing a transcript that directly blames Mr. Krop – without opportunity to cross-examine - will demonstrate an un-redactable presence of inescapable "existence," all without recourse under the Sixth Amendment.  Far from "flyspeck evidence" (USA ECF 53 pg. 2, ¶ 2), Mr. Krop will be the fly smashed without recourse by the unrelenting swatting of both the government and the good sheriff.  Far more than a mere implication of wrongdoing, the government now hinges its entire case on squishing this "fly," Mr. Krop, in order to get after its real prize, the popular elected Sheriff.[2]

---

[2] Once again it was the prosecution in its recent filing, ECF 52, that raises a purely political accusation against Mr. Krop, baldly and falsely claiming a "quid pro quo" in an employee's alleged statement of "support" of Sheriff Jenkins in his re-election.  There was no intent by Mr. Krop to make any quid pro quo offer of election support, nor was there even a such an offer. Any such speech, whether election-related or political or mere opinion, is constitutionally protected under the First Amendment and not suffered for interference.  See, *cf, Counterman v. Colorado*, 600 U.S. \_\_\_\_ (June 29, 2023)(Justice Kagan for the 7-2 majority).  In gentle reminder to the prosecution, local elections are constitutionally protected expressions of local voters' support or lack thereof with the lawful services of its government officials.  The Sheriff has earned this trust of the voters and businesses alike for repeated re-elections.  A motion in limine will be requested for the same of this honorable Court regarding the government's political smears.

In *Richardson*, there was a third accomplice not in the courtroom and the redactions eliminated the existence of the codefendant whatsoever such that a jury could not know by the confession who the "other person" may be. No such facts exist here even though the government proposes to use the phrase "another person" in attempted compliance with *Richardson*. Yet it does so knowing full well the result will be the jury will know for a certain the "other person" is the one before them – the one Mr. Krop. Also in *Richardson*, the government never once referenced or inferred the defendant was the one being mentioned by the codefendant as the accomplice or "other person" and its theory of the case did not depend on tying the get-a-way driver to the murder, as it was a felony murder case where they were not needing to prove who pulled the trigger. Yet here, Mr. Krop is named by the government at least five (5) times in its opposition supplement and **its entire theory of the case requires assertions of his very existence**. And, as explained, *supra*, codefendant Jenkins names Mr. Krop over 22 times in his statement to the ATF. The government's entire theory of the case depends upon the *very existence* of Mr. Krop allegedly intentionally not fulfilling a 10-minute demonstration of machine guns to the Sheriff. How this is a "conspiracy" and why, is demonstrable of the lack of rationale of the charges in the instant case.

*Mens Rea* of Mr. Krop for any violation is entirely nonexistent in this case, so the government says it intends to prove the Sheriff's *mens rea* instead. Mr. Krop's statements were repeatedly clear, that he scrupulously follows the law and its regulations as his integrity and businesses are on the line and was shocked he was being accused of not doing something correctly. Mr. Krop was regularly complying with all the detailed regulations and mandates that the ATF had ever required or notified him of. **Yet the government wants to try and prove its *Mens Rea* mandate against Mr. Krop by allowing – in his presence in front of the jury – an audio and transcript pointing fingers at Mr. Krop, all while preventing cross-examination of the government agent making**

**the statements**.  The government knows Mr. Krop had no illegal intent, so instead it **"centers"** its theory on *the statements of Sheriff Jenkins* to prosecute Mr. Krop.  There is no other "evidence."  See, USA response opposing MTD, ECF 52, pg. 10.

Additionally, in that same just-filed opposition to Defendant Jenkins' motion to dismiss, the government names Mr. Krop at least 18 times and admits that if Mr. Krop had "genuinely intended" *and* documented what the government now adds to the law and calls "**official demonstrations**" to the Sheriff  or "the purchasing authority of the Sheriff's office"  (USA ECF 52, pg. 2 fn 2; pg. 10, ¶ 1), then apparently no "conspiracy" or "false representation" would be alleged by the government and Mr. Krop would not be charged with any wrongdoing.  All because, both the government and codefendant falsely claim, Mr. Krop wanted to rent out machine guns for profit.   But the government's accusations are then that Mr. Krop should have provided machineguns for profit *to the Sheriff's department*.[3] Yet that is exactly what he did and there were indeed "thousands of rounds" of ammunition (USA ECF 52 pg. 13, ¶ 2) fired by – and continue to be fired by - members of law enforcement.[4]

To "prove" its false accusation, the government has now revealed its theory and intent at trial: **use the "admission" of the sheriff to convict Mr. Krop**.  Quoting directly from this prosecution's statements: "The Government's theory of the case **centers on** the fact that the Defendant [Jenkins], *by his own admission*, was not an "expected governmental customer" of the Machine Gun Nest….He had *no intent*…he did not have…machineguns demonstrated *to him*…" and so on and

---

[3] The ATF requires Class III licensees to be for-profit businesses, certified to be a real corporation. All licensed firearms are not possessed by Mr. Krop but only by the entity which the ATF has licensed and on that authorized property alone.  The government seeks here to wrongly use its own requirement for a *for-profit* entity to be a Class III licensee against Mr. Krop the Class III licensee.

[4] The government's claim that FCSO was not a "potential expected governmental customer" of Mr. Krop ECF 52 pg. 11, ¶ 2, is entirely false.  Mr. Krop competes for law enforcement sales and views every law officer including the FCSO as potential customers.  Every day Mr. Krop's business offers FCSO and all governmental customers memberships to demonstrate machineguns and other firearms and he does in fact compete for government contracts.

so forth.  ECF 52, pg 10, ¶ 2.  The government wants to prove – without cross-examination by Mr. Krop – that Mr. Krop should be held out guilty for an "admission" *by codefendant*, not by Mr. Krop.  Thus, the government makes the case for avoiding an actual confrontation of the material facts in this case, and instead, putting to the jury its new theory without ability to question.  Such would violate Mr. Krop's rights.

It is further unjust to try the codefendants together since the government *now* states its theory is not upon any violation of regulations *per se*, as they are lacking in any legal clarity under the "laws…plainly" (USA Opp. MTD, EFC 52 pg. 9, sec. A). The government now rests its efforts on proving "intent," but "intent" of the Sheriff, not Mr. Krop.  The intent argument they say is not to do a 10-minute demonstration potentially desiring a purchase *from Mr. Krop*.  Not a rental, not a DOD contract, not even a County or City police contract.  Now, only an FCSO *purchase* contract, or pending potential contract, *of the machine guns of demonstration interest* – something never contemplated at law.  Such changing theories of the case by the government at a minimum mandates separation of trials and should require dismissal of all charges.

There is no military or other codefendant here.  In fact, unlike the cases the prosecution cites, there is no third defendant here whatsoever, nullifying its inapplicable citation to *Samia*. *Samia v. United States*, 599 U.S. _____, *4, 143 S. Ct. 2004, 2017 (2023)(three defendants, no references).

Throughout the trial in this matter, however, both the government and codefendant will be pointing the finger at Mr. Krop in front of an inflamed jury for allegedly "failing" in some detail of how, when, where and if a "demonstration" took place.  There is no possibility of removing his reference, inference or existence in the Sheriff's implication of him as codefendant. Gone will be the legitimate defense of Mr. Krop legally obtaining and owning the machine guns which he daily demonstrates for the world, for members, law enforcement and purchasers, for military and for

members of the government such as ATF, FBI, ICE, DEA, DHS, DIA, and others, Ft. Detrick, Frederick County Sheriff's Office, Frederick City Police Department, police departments in several of the 11 incorporated Towns in Frederick County, Judges, U.S. Senators, and many others.

Additionally, not only will Mr. Krop be prosecuted by the ATF agents who will testify against him; here, under this prosecution's new narrow Sheriff-focused *mens rea* theory.  He will be co-prosecuted by a State Sheriff as well who, having no *mens rea* to do anything wrong, must seek to point the blame at Mr. Krop which blame the prosecutors alone claim exists – and the reasonable jury will be unable to determine differently other than to hear the "directly accusatory incriminating statements" that "points directly to the defendant" Mr. Krop.  *Gray* v. *Maryland* at 196.  There, the Court said that in *Bruton* "could not have been the slightest doubt as to whose names had been blacked out." *Id.*  Here, the only evidence in the case are the Sheriff's statements – both his interview by the ATF and his letters requesting demonstrations – and redacting Mr. Krop's name and substituting "X" or "Y" or similar redaction is "so obvious as to [instead] perhaps emphasize [Mr. Krop's] identity they purport[] to conceal." *Id.*

As the Court can see, in the instant matter the exact opposite from protecting Mr. Krop's Sixth Amendment right to confrontation will be accomplished should this case be jointly tried; instead of a justice that is blind the jury will hear and see the police in the room pointing at Mr. Krop.

Indeed, the entire conspiracy theory of the government's indictment now hinges upon the Sheriff's so-called statements it alleges implicates Mr. Krop.  The prosecution writes: "[The Sheriff] was not a genuine customer, he had no genuine interest in the machine guns, and had no genuine interest in having a demonstration….**By his own words**, he never intended to purchase these weapons." ECF 52, pgs. 10-11.  The government's opposition responses admit its support for severance at this point, since they admit to planning to use the Sheriff's facially incriminatory

words against Mr. Krop to convict him without cross-examination. *Id.* and ECF 53 pg. 2; *Bruton* v. *United States* at 135-36. According to the prosecution, the governments' conspiracy theory case therefore alleges the Sheriff admitted he did not want to purchase or see machineguns and therefore Mr. Krop did not perform 10-minute demonstrations of lawful guns. Its entire case then, and the defense of the codefendant Sheriff Jenkins, relies upon improper references to Mr. Krop himself allegedly not doing "official" demonstrations, not "another person" (USA ECF 53, pg. 2, ¶ 3).

*Bruton* mandated severance to protect the "clearly implicated defendant" from the statements of a non-testifying codefendant. This Court should as well. Severance must be granted under *Bruton* and its progeny.

## II.    CONCLUSION

For the foregoing reasons Defendant Mr. Krop respectfully moves this honorable Court to sever the trials and protect the Sixth Amendment right of Mr. Krop at trial, along with his rights to present exculpatory evidence to the jury without antagonistic actions of both the government and Sheriff Jenkins acting in concert against him.

Respectfully submitted,
____/s/_____
Daniel L. Cox
THE COX LAW CENTER, LLC
P.O. Box 545
Emmitsburg, MD 21727
Telephone: 410-254-7000 (office)
Facsimile: 410-254-7220
Federal Bar no.: 28245
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on August 7, 2023, a copy of the foregoing motion was filed via ECF, which caused copies to be sent to all parties of record.
_____/s/_____
Daniel L. Cox