IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO: SAG-23-0123 |
| CHARLES A. JENKINS, | * | |
| Defendant | * | |

…ooo0ooo…

### DEFENDANT JENKIN'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant Charles A. Jenkins, by and through undersigned counsel, hereby replies to the government's Opposition to Sheriff Jenkins' Motion to Dismiss. *ECF 52*. The defendant states as follows:

1. Defendant Jenkins filed a Motion to Dismiss the Indictment because as it applies to Sheriff Jenkins, the statutes are constitutionally void for vagueness, and because this prosecution is fundamentally unfair. *ECF 31*. In this Reply the defendant will address the arguments made by the government in its Response (*ECF 52*), and incorporates herein the defendant's arguments previously made.

### STANDING

2. In reliance on *United States v. Hosford*, 843 F.3d 161 (4th Cir. 2016), the government contests Sheriff Jenkins' standing to challenge these statutes. *Hosford* has no bearing on this case. *Hosford* involved unlicensed and illegal gun sales. Samuel Hosford received firearms purchased by Henry Parrott at gun shows, and within hours Hosford

sold them to others in a parking lot.  One or two of those others, turned out to be undercover police officers.  Hosford was charged with unlicensed dealing in firearms and conspiracy to deal firearms without a license in violation of 18 U.S.C. § 922.  Hosford did "not contest that his conduct violated the statute." *Hosford*, 843 F.3d at 169.  Hosford raised a void for vagueness challenge not for himself, but as it applied to others.  The court said,

> "'[A party] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.' (citations omitted) Thus, if a law clearly prohibits a defendant's conduct, the defendant cannot challenge, and a court cannot examine, whether the law may be vague for other hypothetical defendants. ***Because the prohibition against unlicensed firearm dealing is not vague as applied to Hosford, both his as-applied and facial challenges fail.***"

*Id.*, 843 F.3d at 170. (Emphasis added.)  The government only included the first two sentences of this quote in its motion, but it is the third sentence that distinguishes *Hosford* from the present matter.

    3.  For the sake of discussion, the government's argument as applied to this case – and as best as counsel can understand it - seems to be that the statutes and regulatory schemes that are the subject of this prosecution regulate only FFLs.  The government's logic continues, that since a local law enforcement agency is not subject to those prescriptions and proscriptions, these laws do not apply to Jenkins and therefore, he cannot be heard to complain about their vagueness for himself, nor for others.  It is hard to understand how these laws do not apply to Sheriff Jenkins since he has been charged with violating them.  If the government wants to concede, however, that these laws that

dictate the operations of FFLs do not apply to Jenkins, we accept. If the government wants to concede that these laws which dictate the operations of FFLs impose special knowledge and responsibility on FFLs, and not on non-FFLs, we agree. On that basis the charges should be dismissed. The government cannot have it both ways. In contrast to the present case, the defendant in *Hosford* did not dispute that the charges as applied to him and did not make a void for vagueness argument for himself. Sheriff Jenkins is making this argument for himself. The fact that the government asserts that these laws are meant solely for FFLs, a "hypothetical defendant" on behalf of whom Jenkins cannot complain, just proves his point. The defendant will not restate his void for vagueness argument, but the problem remains that these laws, as applied to this defendant, are vague and under these circumstances, to indict Sheriff Jenkins as the government has done is fundamentally unfair.

## MISSTATEMENTS OF FACTS

4. In its opening paragraph "Background and Introduction," the government misstates the evidence.[1] The government asserts that in ***each*** of these law letters the defendant was "falsely claiming he was seeking demonstrations of machineguns" and that Jenkins "claimed that [he] was considering purchasing the machineguns for use by the Frederick County Sheriff's office when he was not." ECF 52, p. 1. The first paragraph of the letter dated October 8, 2015, said,

---

[1] The five letters are attached as Exhibit 4 to defendant Jenkins' Motion to Dismiss. *ECF 31*. These letters, all addressed to defendant Krop or one of his FFL businesses, are dated August 25, 2015, October 8, 2015, August 19, 2016, April 10, 2018, and March 29, 2022.

> "The Frederick County Sheriff's Office is requesting a demonstration by RK86 LLC.  This request is ***not indicative of any interest*** by the Frederick County Sheriff's Office to procure firearms." This demonstration will evaluate the firearms listed below. (Emphasis added.)

There was no demonstration as requested because Krop never told Sheriff Jenkins that the firearms had arrived.  More to the point, however, Sheriff Jenkins expressly said in that letter that he had **no interest** in purchasing any firearms.  Yet the government is claiming that Jenkins said he "was considering purchasing machineguns for use by the [FSCO]." *Id.*  No, he did not say that.  Was this an innocent mistake?  Or is there a knowing and willful intent to mislead the Court?  If this were some kind of criminal cabal, Jenkins would have made sure to say all the right things; and would have made sure to conduct a demonstration.  That Krop used this letter, insufficient as it is, to obtain firearms, is on Krop.  That the ATF approved this letter, insufficient as it is, is on the ATF.  That Jenkins never learned from any source that the firearms had arrived at TMGN, is on both.

    5.  The government is so blindly convinced of Sheriff Jenkins' criminal intent to deceive that this letter is the subject matter of an overt act alleged in the indictment.  *See Indictment, ¶ 19b.*  The overt act quotes part of the letter.  It is the first paragraph in the letter quoted above, ***but*** suspiciously does not include the sentence in the middle where it says, "This request is not indicative of any interest by the Frederick County Sheriff's Office to procure firearms." *Id.*  That the government deliberately omitted that sentence when drafting the Indictment is concerning to say the least.  Was this an innocent mistake?  Or was there a knowing and willful intent to deceive the grand jury by

omission? As stated in the defendant's original Motion to Dismiss, the government does not come to this prosecution with clean hands.

6. Another misstatement of fact by the government can be seen in the letter dated March 29, 2022. That letter begins,

> "As Chief Law Enforcement Official for Frederick County, I have verified that the transfer of the below listed post-1986 machine guns from the Havre-de-Grace, Maryland Police Department to The Machine Gun Nest located in Frederick County. (sic) The machine guns being transferred will remain in the possession of and be used solely by The Machine Gun Nest for demonstration purposes only on the premises."

Once again, there is no expressed interest in purchasing any firearms. Yet the government falsely claims that by this letter Jenkins "claimed that [he] was considering purchasing machineguns for use by the [FCSO]." *ECF 52, p.1*. The letter says no such thing. Another false statement by the government. A common sense reading of this letter, instead of the jaundiced view through which the government seems to be interpreting every part of this case, reflects that this letter was never intended to be a "law letter." It merely confirmed that a transfer was going to occur from the Havre de Grace Police Department to TMGN. Remarkably, ATF found this letter insufficient – as they should since it did not meet any of their criteria.[2]

7. These repeated misstatements are troubling. In light of these misstatements of fact, the defendant has genuine concerns about what kind of instructions the grand jury

---

[2] Since ATF seems to have approved any letter regardless of its adequacy, ATF likely disapproved this letter only because Sheriff Jenkins was already under investigation.

received – about the facts and the law - about each of the overt acts, about each of the counts, and what they were told about the required elements of each count, especially since there is a dearth of evidence showing an agreement or any evidence of criminal intent on the part of Sheriff Jenkins.  It is hard to know if the government's disregard of its own evidence is just carelessness, or something more nefarious.[3]  It is hard to know – in any situation – whether actions that in retrospect are somehow incorrect or improper are so, because of carelessness, negligence, or an intent to deceive.  In this case, the defendant admits and owns that he was negligent.  Negligence is not criminal culpability.  In his interview with the agents, he learned that he should have been more careful.  But there is plenty of negligence and plenty of blame to go around.  The defendant's original Motion to Dismiss described more than a decade of failed efforts by ATF related to law letters, open letters to FFLs, and for blindly approving insufficient letters. Were the ATF officials that signed off on insufficient law letters careless, negligent, or actually part of some conspiracy to defraud the United States?  The defendant submits it is just as ridiculous and incomprehensible that Sheriff Jenkins was in such a conspiracy as it is to

---

[3] Defendant Jenkins' Motion for Grand Jury Minutes was deliberately filed ahead of his Reply to the Government's Opposition. If in fact there are irregularities in the grand jury, these are additional grounds for the Motion to Dismiss.  Counsel believes there is a reasonable probability that the grand jurors may have been misadvised. The defendant asks to discover all the instructions given to the grand jury – about the elements of each crime and how the evidence supported each element - when witnesses left the room.  The defendant would be more than happy to have the Court review these records *in camera* before turning them over to the defendant.

6

believe those allegations about ATF personnel. Again, plenty of blame to go around. Negligence is not criminal culpability.

8. The government also states that these law letters permitted Krop to "acquire machineguns. . . that he would otherwise have been prohibited from obtaining." ECF 52, p.2. There are a couple of problems with this statement. First of all, as legal support for this statement, the government cites its own Indictment. *See ECF 52, p.2, fn 1*. As fallacious as this is, even the Indictment does not support this statement. Paragraphs 8., 9., and 10., specifically state that "[e]xcept for narrow exceptions" an FFL could not obtain these machineguns without a law letter. Apparently, there are exceptions to this otherwise blanket assertion made by the government. As alleged in Jenkins' original Motion to Dismiss, the law in this area is vague and confusing. So much so that even the government doesn't understand it.

## **VOID FOR VAGUENESS**

9. The defendant directs the Court to Count Three of the Indictment. This count charges both defendants with a violation of 18 U.S.C. § 924(a)(1)(A). This statute makes it a crime to "***knowingly and willfully*** make and cause to be made false statements and representations with respect to information. . . ***required to be kept in the records of [FFLs]*** individuals licensed under Chapter 44". (Emphasis added.) *See Count Three.* It seems clear that this statute is specifically directed to FFLs who know or should know what information is "required to be kept in the records of" an FFL, and who are periodically educated and inspected by ATF to accomplish this purpose. This is a specific intent crime. Alleging this violation against defendant Krop, makes sense. It does not

7

make sense as applied to defendant Jenkins. In order for the government to prove that Sheriff Jenkins **knowingly and willfully** committed this crime, they have to prove that he knew or should have known what is required to be kept in the records of an FFL. A brief search for cases where this statute has been charged reflected three categories of persons against whom this charge is brought: One is FFLs, two is persons who lie on their applications to become FFLs, and the third are straw purchasers.[4] Straw purchasers were charged, not because those defendants knew what records were to be maintained by an FFL, but because they fraudulently filled out the ATF Firearms Transaction Record, Form 4473. That form, which must be signed by all purchasers of firearms states,

> "I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. . . I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms or the purpose of resale to predominantly earn a profit without a Federal firearms license is a violation of Federal law."

---

[4] *See*, *United States v. Kelerchain*, 937 F.3d 895 (7th Cir 2019)(Defendant was an FFL.); *Armament Services Int'l, Inc. v. Yates*, 2017 WL 5886048 (E.D. Pa. Nov. 27, 2017)(Ex-FFL dealer trying to re-obtain FFL license.); *United States v. Abramski*, 778 F. Supp. 2d 678 (W.D. Va 2011), *aff'd*, 706 F.3d 307 (4th Cir. 2013, *aff'd*, 573 U.S. 169 (2014)(False statement on Form 4473); *United States v Soto*, 539 F.3d 191 (3rh Cir. 2008)(False statement on Form 4473.); *United States v. McCord*, 904 F. Supp. 1029 (D. Neb. 1995)(False statement on Form 4473.); *United States v. Howell*, 37 F.3d 1197 (7th Cir. 1994)( False statement on Form 4473.).

*See Firearm Transaction Record, Form 4473, p.2,* attached as Exhibit 1.  When a purchaser of a firearm reads this form, they have knowledge; and when they sign it under oath, their act is willful.  It makes perfect sense.  Count Three as it relates to Sheriff Jenkins does not.  This count should be dismissed because it cannot apply to the Sheriff.  Alternatively, if this statute does apply to someone who is not an FFL and has not read a clear and concise warning from ATF, then it truly is void for vagueness as applied because it fails to give notice of the act that is a violation of this statute.  Either way it is fundamentally unfair to charge Sheriff Jenkins with any violation of this statute.

      10. The government accuses the defense of "myopically focusing on a definition of 'demonstration'," *ECT 52, p.10*, but then proceeds to claim an inability to define "demonstration" for purposes of this case because it would be "impractical."  The government claims there are too many situations for it to be defined. *ECT 52, p.13.*  So, in the face of our challenge to this Indictment because the statutes and regulations they are attempting to enforce are void for vagueness, the central component of a law letter (itself an "industry term" without governmental definition), a "demonstration" cannot be defined.  Perhaps it is like "pornography," it cannot be defined, but the prosecution knows it when it sees it.

      11. The government insists that no demonstrations were ever intended.  To the extent that Sheriff Jenkins was even aware or understood ATF's directives, the evidence suggests otherwise.  The very first law letter written by Sheriff Jenkins, for an FFL named Ray Casteline, was in 2011.  When those firearms came in, Casteline called Sheriff Jenkins and they arranged for a demonstration.  After that, Sheriff Jenkins wrote

more letters, and it is more than reasonable for Jenkins to assume that when those firearms were obtained, (and firearms were not always obtained following a request which is why they are repeated in a later letter,) if a call had been placed to Sheriff Jenkins from the FFL, there would have been a demonstration.  As was argued in the defendant's original Motion to Dismiss, it is unreasonable for the follow-up burden to be on Sheriff Jenkins.  As the government astutely points out, these laws and regulations apply to FFLs.  The follow-up burden therefore should be on them.  It is on them.

      12.   The government's motion magically vaults from defining a "government customer" of firearms from someone having "an eye towards possible, if not probable or certain, purchase of the machinegun(s)", *ECT 52, p.6,* to one having a "bona fide interest," "a genuine interest" or an actual interest in the firearm, without any citation to authority. *ECT 52, pp.10, 12.*  In 2015, the year of the first two demonstration letters involving TMGN, the FCSO purchased 12 automatic weapons, ultimately from Adams Arms Corp.  The agents that interviewed Sheriff Jenkins in May of 2022 mentioned this very fact to the Sheriff.  In other words, the government had this evidence.  They knew that at some point in 2015, Sheriff Jenkins was in the market for firearms.  The FCSO, and the defendant, clearly had a bona fide interest in purchasing automatic weapons in 2015 and did so.  But another firearms dealer was chosen, not TMGN.  For future sales, the FCSO had the right to select any FFL.  The Havre de Grace Police Department apparently chose TMGN and brokered a trade with them.   The critical point here is that a potential customer does not have to reach a probable or genuine-interest state of mind about a purchase or transfer until he has had a chance to look at the merchandise.

10

According to the government's discovery which included Sheriff Jenkins' emails, there are no communications to Sheriff Jenkins or his department from TMGN that the imported firearms specified in the Indictment ever arrived in the United States, let alone in Frederick County. Sheriff Jenkins had no reason to schedule a demonstration.

      13. The government alleges that the defendant's Motion to Dismiss "focuses too much on conduct and too little on intent." The government's theory is that "the defendant never intended to have a demonstration in the first place." *ECF 52, p. 12*. As noted, the discovery is unrebutted that Sheriff Jenkins was never notified of the arrival of any of the imported firearms from dockside, by either the importer or by TMGN, including defendant Krop. When would Sheriff Jenkins have requested a demonstration, let alone developed a "bona fide interest in future sales," to use the government phrasing, if he did not know the guns had arrived? Curiously, the government states that "[t]hese statutes narrowly restrict the few occasions in which a government agency (like FCSO) can use a dealer to possess and transfer a machine gun." *ECT 52, P.12*. The cited statutes and regulations were written in order to supervise and regulate the conduct of FFLs, not local law enforcement governmental agencies. That is why they should not in all fairness apply to Sheriff Jenkins who clearly had no understanding and no legally imposed obligation to understand the legal significance of these letter. In contrast, it makes sense when it is applied to the cases across the country of Sheriffs or other law enforcement officers conspiring with FFLs and getting kickbacks for writing letters, and/or getting a percentage of the FFLs rental income. The fact that law enforcement officials are getting

kickbacks is evidence of a criminal intent. Knowledge is therefore presumed. The opposite is the case here, according to the government's discovery.

      14. The defendant agrees with the government when they say there should be less focus on conduct and more focus on **intent**. The defendant could not agree more and has repeatedly made the same argument to the government. The actual conduct by Sheriff Jenkins is not at issue. The issue in this prosecution is the intent. That there is no evidence of criminal intent *is* the issue. The defendant wishes the government would focus more on intent and on the actual evidence. The government seems to be caught up in a theory - and said as much to this Court on July 18, 2023 - and are trying to stuff this case into that framework. Defendant Jenkins has asked for a reverse proffer to help the defense understand how the government intends to prove an agreement between the parties and an intent to defraud, deceive or otherwise violate the law by Jenkins.[5]

      15. Additional proof that the government's disregard of evidence that does not fit their theories, is also reflected in their Response. The government continues to reference the email exchange between Sheriff Jenkins and Isaac Burrell, an employee at TMGN. *ECT 52, p.3.* The email exchange occurred in May of 2022, ***more than a month***

---

[5] Along those same lines, in June of 2022, counsel for the as yet not indicted Sheriff Jenkins asked the AUSAs on this case several times to sit down and speak with Jenkins. These offers were made verbally several times and once in writing by letter. Jenkins was more than willing – in fact he was anxious - to come in and meet with the prosecution. It may be the first time in history that an AUSA turned down the opportunity to speak to a target. It suggests that the government decided very early on that Sheriff Jenkins was guilty and did not want to know otherwise. Combine this with the many misstatements and the government's disregard of evidence of the Sheriff's innocence, and this conclusion is inescapable.

*after* the last letter written by Sheriff Jenkins. In the email Burrell offered political support for Jenkins who was campaigning for his fifth term for the office of Sheriff. It is nonsensical that a passing offer of support, **after the fact**, is seen as some kind of *quid pro quo* for Jenkins' law letters. There is absolutely no evidence that Sheriff Jenkins ever accepted anything for these letters. The government has scrutinized years of election records kept by Sheriff Jenkins' treasurer and has interviewed a half dozen persons that worked in TMGN. There is no evidence to support this erroneous and offensive insinuation. These two men, Jenkins and Krop, barely knew each other. But the government gratuitously keeps bringing it up. Furthermore, the government has advised counsel that they are unaware that Jenkins ever turned down such an offer – irrelevant as it is. Counsel assumed that the government would want to get it right. They would want to know how Jenkins' responded. Counsel assumed it was the government's responsibility to get to the truth of something before they included it in their Indictment and repeated it *ad nauseum* in every motion they file with this Court.

16. In conclusion, the government's opposition motion flies free of the facts portrayed in their own discovery, especially Sheriff Jenkins' statement in May, 2022 to the ATF agents, who unequivocally understood that he was telling the truth and came to their own conclusion that Krop had used Sheriff Jenkins for his own purposes. Only by ignoring the true tone and tenor of Sheriff Jenkins' truthful statement to ATF and by ignoring all of the other evidence reflecting Sheriff Jenkins' innocence, can the government contort these facts into a suitable scenario for a federal criminal Indictment. This prosecution is fundamentally unfair.

WHEREFORE, Sheriff Jenkins respectfully asks this Court to dismiss the Indictment against him.

Respectfully submitted,

SILVERMAN/THOMPSON/SLUTKIN/WHITE

/s/Andrea L. Smith
By _____
Andrea L. Smith, Of Counsel
Federal Bar #: 00397

Andrew C. White, Esquire
Federal Bar #: 08821
404 E. Pratt Street, Ninth Floor
Baltimore, Maryland 21201
(410) 385-2555
Email: Asmith@silvermanthompson.com

ETHRIDGE, QUINN, KEMP, ROWAN & HARTINGER

/s/Paul F. Kemp
By_____
Paul F. Kemp, Esquire
Federal Bar #: 01260

Margaret A. Teahan, Esquire
Federal Bar #: 20364
100 N. Court Street
Frederick, Maryland 21701
(301) 698-8182
Email: mat@eqlawyers.com

*Attorneys for Charles Austin Jenkins*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of August, 2023, a copy of the Defendant Jenkins' Reply to Government's Opposition to Defendant's Motion to Dismiss, was filed via ECF causing copies to be sent to all parties of record.

/s/
_____
Andrea L. Smith