IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO: SAG-23-0123 |
| CHARLES A. JENKINS, | * | |
| Defendant | * | |

…ooo0ooo…

**DEFENDANT JENKINS' REPLY TO GOVERNMENT'S
RESPONSE TO MOTION FOR GRAND JURY MATERIALS**

Defendant Charles A. Jenkins, by and through undersigned counsel, hereby replies to the Government's Response (*ECF 71*) to the defendant's Motion for Grand Jury Minutes and Witness Testimony (*ECF 62*). In support thereof, Defendant Jenkins states as follows:

THE LAW

The defendant has a constitutional right to present a defense. This right was articulated by the Supreme Court in *Holmes v. South Carolina,* 547 U.S. 319 (2006), which recognized that while federal and state lawmakers have "broad latitude" to establish rules regarding evidentiary utilization. "This latitude, however, has limits. 'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S. Ct. 2142 (1986) (*quoting California v. Trombetta,* 467 U.S. 479, 485, 104 S. Ct. 2528 (1984)).

The Sixth Amendment provides as follows:

> "(i)n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of ***the nature and cause of the accusation***; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."  (Emphasis added.)

*U.S. Const. Amendment VI.*  A defendant's right to present a complete defense stands on an equal footing with other Sixth Amendment rights and must be given no less consideration by a court.  As more fully described below, Sheriff Jenkins is justifiably concerned about the "nature and cause of the accusations" that are being made against him, especially when viewed against the misleading and contradictory statements of the government's indictment and pleadings.   In requesting that this Court conduct an *in camera* review of the grand jury minutes, Sheriff Jenkins is asking the Court for an accommodation that the defendant believes is absolutely necessary to enable him to fully meet his burden on his Motion to Dismiss.[1]

The Federal Rules of Criminal Procedure provide that a "court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of

---

[1] Should the Court deny Sheriff' Jenkins' motion for grand jury minutes and then deny Sheriff Jenkins' motion to dismiss on the grounds that the defendant has failed to meet his burden, the denial of the motion to dismiss will be reviewed *de novo*, as it concerns the alleged violation of a constitutional right.  *United States v. Brune*, 767 F. 3d 1009, 1015 (2014) ("We review *de novo* the district court's denial of a motion to dismiss an indictment on constitutional grounds.") *United States v. Carel,* 668 F. 3d 1211, 1216 (10th Cir. 2011).

a grand-jury matter . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury . . ." *Fed. R. Crim. P. 6(e)(3)(E)(ii)*.  The defendant bears the burden of showing a "particularized need" based on facts and not mere speculation.  That showing is (1) when the information is sought in order "to avoid a possible injustice," (2) when the need for disclosure outweighs the need for continued secrecy, and (3) when the request is limited to only that information which is needed to accomplish the goal of avoiding a possible injustice.  *In re Grand Jury Subpoena,* 103 F.3d 234, 239 (2d Cir, 1996) (quoting *Douglas Oil Co. v. Petrol Stops Nw.,* 441 U.S. 211 (1979).)  This standard applies to the review of both substantive evidence (ie, witness testimony) and to ministerial matters (ie, instructions given to a grand jury).  *United States v. Hoey*, No. S3 11-cr-337 (PKC), 2014 WL 2998523, at *6-9.  A determination by the district court whether there exists a "particularized need," will be reviewed on appeal for an abuse of discretion.  *In re Grand Jury Subpoena, Id.*  The government is not required to instruct a grand jury on the applicable law in a case when seeking the return of an indictment.  However, erroneous or incomplete instructions can be grounds for dismissal.  *United States v. Smith,* 105 F.Supp.3d 255, 262 (W.D.N.Y. 2015).   Defendant Jenkins submits that he has demonstrated the "particularized need" for the reasons summarized below.

     In the government's response to the defendant's motion for grand jury materials, the prosecution opines that the misstatements and irregularities identified by defense counsel are just "perceptions."  (*ECF 71, at 2,)* This is a ridiculous position to take.  For the government to posture in their response that "[d]efense counsel for Mr. Jenkins points

to a few places in the government's response that they believe are examples of misstatements" is inaccurate. *Id.* There is no subjective analysis occurring in the defense's interpretation of the government's response. Moreover, the defendant is not asserting "speculations about possible irregularities." *United States v, Leung,* 40 F,3d 577m 582 (2d Cir. 1994). This is not a fishing expedition. *United States v. George*, 839 F. Supp. 2d 430, 437 (D.Mass. 2012). These irregularities have become apparent at this stage of the litigation and are based upon statements made by the government both in their filings and in open court. These statements reflect at worst a lack of regard or misconduct, or at best a lack of understanding about, the significance of specific facts both included and missing from the Indictment as described in the government's pleadings. In response to the defendant's request for grand jury materials, the government continues to assume facts for which there is no evidence. They jump to conclusions based upon these assumptions and fail to adequately address the issues raised by the defendant.

THE INDICTMENT

As is typical in a speaking indictment, and especially when the subject matter is somewhat technical due to administrative rules and regulations overlaying the statutory scheme, Count One of the present Indictment contains assertions of law related to the charges contained in the Indictment. Paragraph 7, for example, states – in plain language - that an exception to the general prohibition against the possession of post-86 machineguns contained in ATF regulations, requires the existence of a "potential law enforcement [ ] purchaser." Once there is a bona fide law enforcement customer, the law

allows that agency to (1) order the firearm or (2) ask for a demonstration of the firearm to consider buying it.  Both options require a letter from the agency which ***must*** include specific supporting information, (ie, size of agency, need for that firearm, availability of that firearm, etc.).  If a letter meets these requirements, it is a valid "law letter."  After reviewing the relevant statutes (charged in the Indictment), the relevant CFRs and the open letters issued to FFLs across the United States by the ATF over the past 25 years, what should be a simple process is anything but.  The current Indictment identifies five letters written by defendant Jenkins at the request of defendant Krop.  From the government's point of view revealed in their motions' responses, these five letters are the gravamen of the alleged crimes.  Not one of these letters – measured against the ATF's requirements - are sufficient.  Nor are these letters sufficient to support the allegations in the Indictment.

COUNT ONE

In the government's response to the defendant's Motion to Dismiss, (*ECF 52*) the government stated that each of the five letters "*claimed that the Defendant was considering purchasing the machineguns for use by the Frederick County Sheriff's Office when he was not.*" *Id., p.1*.  As it relates to two letters, one from October of 2015, and one from March of 2022, these assertions are false.  For example, the second sentence in the first paragraph of the October 2015 letter reads, "*This request is not indicative of any interest by the Frederick County Sheriff's Office to procure firearms.*"  The defendant described this discrepancy in his more recent Motion for Grand Jury Minutes and Witness Testimony. (*ECF 62.*)  In response to that motion, the government then admitted

5

"[t]*hough defense counsel **correctly states that the letter makes clear that defendant Jenkins did not intend to procure the firearms**, the intent of this letter was for it to be a "law letter" expressing interest in conducting a demonstration of the machineguns.*" *ECF 71, p.3.* (Emphasis added.)  There are several problems with this statement by the government.

Initially, the government has now expressly contradicted itself.  Either the letter reflects an intent to purchase, or it does not.  That the government ***now*** acknowledges that there was no interest in a purchase expressed in the letter, should really be the end of the conversation.  It should also be the beginning of the inquiry why this letter was included in the Indictment.  The defendant's concern is over how this letter was presented to the grand jury, not only with reference to the specific language in the letter, but with reference to what the grand jury was led to believe was significant in any of these letters.  We know the starting point for these "law letters" is a bona fide purchaser.  This March 2015 letter is a non-starter.[2]   For this letter to form the basis of an overt act, then *a fortiori*, it must have been represented to the grand jury as an expression of interest in purchasing firearms.  That would be improper since it is not true factually, nor as an erroneous legal instruction, as the government has now admitted.  By virtue of its inclusion in the Indictment, it is reasonable to conclude that the grand jury was provided bad or incomplete information.

---

[2]  It bears repeating, if ATF had done their job, this discussion would be moot.  How insufficient does a purported law letter need to be before (1) ATF rejects it; and (2) the letter actually reflects a complete lack of knowledge on the part of its writer thereby negating any criminal intent?

The language in the Indictment, in the overt act contained in paragraph 19.b., specifically quotes several sentences in the October 2015 letter written by the defendant. ***It does not, however, include the sentence where Jenkins states that he has no interest in making a purchase.***  This sadly suggests a deliberate attempt to mislead the grand jury.  While the prosecution does not have to present exculpatory information to a grand jury, dissecting the evidence to make it support their theory is not just the act of merely not mentioning exculpatory evidence.  The government must have told the grand jury, mistakenly as they now admit, that this letter expressed an intent to purchase – when it did not.  This is a genuine and specific concern.  This is not mere speculation.  Furthermore, this is not a prosecution involving thousands of pages of documents.  These letters are one page each.  Because of the missing sentence in the overt act, the defendant has to ask if this particular letter was even presented to the grand jury.  There is genuine concern that this letter was simply synopsized by either a grand jury witness, or the government, with the pertinent statement expressing a non-interest in purchase being edited out because it did not fit within the government's theory of prosecution.

In the interest of justice, the defendant asks this Court to conduct an *in camera* review of the grand jury materials, both witness testimony and the instructions provided to the grand jury.  If the government told the grand jury – as they have maintained in their filings with the Court - that all five letters expressed an interest in a purchase while neglecting, to put it kindly, to point out the second sentence in the October 2015 letter, then this Indictment must be dismissed.

After admitting in their response that there was no expressed intent to purchase, the government attempts, however, to ameliorate their error with a *non sequitur*. The government's words, "the intent of this letter was for it to be a 'law letter,'" is unsupported nonsense flying free of the actual contents of the letter and the legal requirements of a law letter generally. The government, without any evidence, purports to know what was in the defendant's mind. Once again, the government gets ahead of itself, because an "intent" requires "knowledge." As described more fully below, the government has assumed "knowledge" throughout the Indictment.

The government's argument appears to be that because the letter states an interest in a "demonstration," ("*the intent of this letter was for it to be a "law letter" expressing interest in conducting a demonstration of the machineguns*," *Id.,*) the letter magically transforms into an interest in purchasing firearms, which is then regarded as fraudulent. A letter does not qualify as a "law letter" unless it expresses a bona fide interest in a purchase. Paragraph 7 of the Indictment instructs as much. The government knows the first question is the status of the law enforcement agency – potential purchaser or not. The fraud is to pretend to be a potential purchaser. The request for a demonstration means nothing, which makes perfect sense since there is actually no law that requires a demonstration, no legal definition of what a demonstration is, and no time prescription within which to have one that is not required in the first place. *United States v. Kelerchian*, 937 F.3d 895, 916 (7th Cir. 2019) ("The law does not require a dealer who receives a machine gun for use as a sale sample to do a demonstration of the machine gun.") If the law enforcement agency is not interested in any possible purchase, they can

8

ask for a demonstration all they want. They can describe fifteen different ways that they will evaluate the firearms to no avail. ATF should have just done their job, followed the checklist of requirements they expect of everyone else, and just said no. The fact that the government demonstrably contradicts itself on the elements of the crime, justifies this Court's review of the grand jury materials.[3]

Other concerns in Count One – again based upon representations by the government in their motions and in the Indictment – relate to the evidence of "knowing" and "willful" conduct by defendant Jenkins. The actual conspiracy allegation begins at paragraph 12. The Indictment alleges that the defendants "did knowingly and willfully" agree to do five delineated acts. *Indictment, ¶¶ 12(a) through (e)*. The defendant acknowledges that the law does not require that there be a factual or "detailed allegation regarding a defendant's knowledge of the conspiracy" in the Indictment. If the Indictment is facially valid that is sufficient. *Wong Tai v. United States*, 273 U.S. 77, 81 (1927); *United States v. Larrazolo,* 869 F.2d 1354, 1359 (9th Cir. 1989), *overruled on other grounds by Midland Asphalt Corp. v. United States,* 489 U.S 794 (1989). The law does require, however, that the grand jury be presented with evidence to support the allegations in an indictment. The defendant is asking the Court to conduct an *in camera*

---

[3] For the sake of discussion, even if the government is implying that (despite a stated non-interest in purchasing a firearm in the October 2015 letter,) the discussion about demonstrations somehow contradicts the earlier statement of not being interested in a purchase, then the intent of the letter is ambivalent at best. Leaving out the assertion in the overt acts in the Indictment (*¶19.b.*), that the FCSO was not interested in a purchase, is misleading. It bears repeating, that while the prosecution does not have to present exculpatory information to a grand jury, dissecting the evidence to make it support their theory is not just the act of merely not mentioning exculpatory evidence. It is improper. It is misconduct and is grounds for dismissal.

review to be satisfied that (1) evidence of Sheriff Jenkins knowing and willful actions, and (2) evidence of Sheriff Jenkins' knowledge of the conspiracy and its purpose, was presented to the grand jury.[4]  The defendant does not make this request because there are no factual allegations about this in the Indictment to support those elements.  The defendant makes this request, because now that the defense has reviewed in excess of 2,000 pages of discovery, and more than a half dozen recorded interviews with witnesses (one of whom said she did not believe that Sheriff Jenkins even knew what he was signing), ***there is no such evidence***.[5]  If there is no evidence that this defendant acted knowingly and with an intent to deceive, then the entire Indictment must be dismissed. Critically, the prosecution has already admitted on the record in open court that it does not have any evidence to prove the existence of the conspiracy.  That statement in and of itself should cause grave concern to the Court.  It is fundamentally unfair for the defendant to have to endure, financially and otherwise, a trial to get to this same outcome.

---

[4] Paragraph 13 of the Indictment asserts that the purpose of the conspiracy was "to acquire machineguns by means of fraud and materially false statements and representations and to rent those machine guns to private citizens in exchange for money."  An FFL, such as defendant Krop, who has knowledge by virtue of his license would act knowingly if in contravention of the rules, regulations, and laws.  Presenting evidence to the grand jury that Krop has an FFL license, would satisfy the knowledge requirement as to Krop. What evidence is there that Sheriff Jenkins knew the purpose of this conspiracy or agreed to join this conspiracy?

[5] Any attorney who has handled conspiracy cases for the prosecution or the defense knows what that evidence looks like.  It could be the email between the co-conspirators, the overheard conversation or instructions by one member of the conspiracy to another; the bribe; or the kick back.  That evidence just does not exist in this case.  To avoid a "possible injustice" envisioned by Fed. R. Crim. P. , Rule 6, the instructions relevant to *mens rea* given to the grand jury should be disclosed.

Finally, at the risk of beating a dead horse, the defendant points to paragraph 14 of the Indictment, which alleges, "TMGN offered political support to JENKINS in recognition of his support for TMGN's business." This statement contained in the Indictment is followed by an email exchange dated in May of 2022 between the "Chief Operating Officer" with TMGN, Isaac Burrell, and Sheriff Jenkins. This exchange is a full month past the date of the last letter used by the government which is the subject matter of Count Five. The defendant cannot locate any evidence that establishes that this offer of political support was "in recognition of support for TMGN's business." Just because the government thinks so, does not make it competent evidence. Moreover, not only could any such motive on the part of someone at TMGN not impugn Jenkins, where is the evidence that this offer even came from defendant Krop? Isaac Burrell is not a co-conspirator. In fact, there are no other conspirators other than Krop and Jenkins according to the Indictment. Significantly, there is no evidence that Krop directed any such offer, nor that Jenkins accepted anything at all in return for signing these letters. This is another example of the government making assumptions and erroneously jumping to conclusions. They have assumed criminal *mens rea*. The government actually admitted that Jenkins received nothing of value in an earlier motion filed by the government. (*ECF 22, pp. 13, 17*.) In light of the repeated emphasis by the government about these emails first in the Indictment and repeated in several court filings, the defendant has concerns about how these emails were presented to the grand jury and what they were told was their significance. Unsupported inuendo is dangerous and improper.

COUNTS TWO THROUGH FIVE

Counts Two through Five all require proof that these crimes were committed "knowingly."  Negligence is not criminal culpability.  If the grand jury was not provided evidence of knowledge for each count, then those counts are defective.  The defendant is not merely speculating that the evidence does not exist.  The government has not, and the defendant submits, cannot produce that evidence now.  Since the indictment alleges "knowledge" in each count, *a fortiori* the government must have given the grand jury evidence of knowledge.  If the prosecution skipped over it and hoped no one would notice, that is equally improper and equally flawed.

COUNT FIVE

With specific reference to Count Five, the defendant is charged with "knowingly and willfully" making . . . a law letter requesting demonstrations of . . . machineguns."  In addition to the lack of evidence of knowledge discussed above, there's another problem with Count Five. This count references a letter dated March 29, 2022.  That letter states – in its entirety:

> As Chief Law Enforcement Official for Frederick County, I have verified that the transfer of the below listed post-1986 machine guns from the Havre-de-Grace, Maryland Police Department to The Machine Gun Nest located in Frederick County. (sic) The machine guns being transferred will remain in the possession of and be used solely by The Machine Gun Nest for demonstration purposes only on the premises.
>
> [Seven firearms are listed]
>
> The Machine Gun Nest has provided my office with copies of all applicable paperwork (TF Form 5), for each of the firearms being transferred.  If you have any questions regarding the transfer of these

firearms, please feel free to contact me directly at 301-600-1532.

The government has represented in the Indictment and in its motions that this letter is a false writing, and that in this letter the Sheriff "claimed that [he] was considering purchasing machineguns for use by the [FCSO]" and "was seeking demonstrations of machineguns." (*ECF 52, p.1.*)  As stated in one of the defendant's earlier motions, this March 2022 letter says no such thing.  In the government's Response to defendants Motion for Grand Jury Minutes and Witness Testimony, the government says that "the letter mentions specifically that the machineguns are being transferred for ***demonstration purposes only***." (ECF 71, p.4.) (Emphasis in original.)  Somehow that assertion is meant to support the government's conclusion that Sheriff Jenkins is seeking to purchase firearms and is requesting demonstrations.   The government knows – they alleged as much in the Indictment (*see ¶ 13)* and specifically in Count Five – that Krop uses these weapons for demonstrations for paying customers.  This was Krop's motive.  Once again, the government sees the word "demonstration" and zooms right to the conclusion that this was a knowingly intentional act of fraud by Sheriff Jenkins.  They see the word "demonstration" and lose all ability to be objective and reasonable.  This particular letter is completely inconsistent with all of the other letters.  Common sense dictates that this letter is merely advising ATF that TMGN wanted to purchase machineguns from the Harve de Grace police department.  The government conducted a surreptitious interview with Sheriff Jenkins almost a year before the Indictment was returned and less than two months after this letter was written.  In that conversation the agents and Jenkins discussed the March 2022 letter.  Sheriff Jenkins clearly stated that he did not even understand what

that letter was about – that it was not the same as the other letters he had written. The letter was merely telling ATF that TMGN was obtaining them from some other law enforcement agency. The government not only ignores the plain meaning of this letter, they also ignore the evidence they obtained directly from defendant Jenkins, who was being completely honest according to their own agents. This is not "mere speculation" by the defendant as alleged by the government. Like the October 2015 letter, if there is no expression of an intent to purchase, that should be the end of the conversation. And this should be the beginning of the Court's inquiry into the grand jury materials to determine how this March 2022 letter became the basis for Count Five. That count specifically says that Sheriff Jenkins wrote a "law letter . . . requesting firearms demonstrations." (*See Count Five.*) Since the grand jury returned the Indictment, *a fortiori,* the government must have improperly told the grand jury the same thing about this letter that they have told the Court in their motions' responses. How else could the grand jury possibly have returned Count Five?

CONCLUSION

This is not a fishing expedition. There is overwhelming and objective evidence to support the defendant's belief that the grand jury was not provided complete information. More concerning is that these cumulative acts by the government reveals either a blind determination by the government to convict Sheriff Jenkins, who by all accounts, including the evidence disclosed to date, was an unwitting participant and nothing more than negligent, or a complete misunderstanding of the law by the government. Over-burdened prosecutors can make mistakes. Actions taken through innocent lack of

knowledge or experience, or deliberate intentional deception can look the same.  The defendant will never know how this happened unless the Court orders a review of the grand jury materials, but without question these "irregularities" did happen.  For the Court to determine how what clearly looks to the defendant like blind determination to twist every fact and every innuendo against the defendant, was presented in the grand jury is imperative.  The government has lost sight of its role.

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*United States v. Berger*, 295 U.S. 78, 88 (1935).  The Court continues, "It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions [and] insinuations . . . are apt to carry much weight against the accused when they should properly carry none. *Id.*

The defendant respectfully asks this Court to review the grand jury materials *in camera* so that justice may prevail.  The defendant further incorporates herein his

Motion to Dismiss, *ECF 31*, and asks in the alternative, for this Court to dismiss this Indictment with prejudice.

Respectfully submitted,

SILVERMAN/THOMPSON/SLUTKIN/WHITE

/s/Andrea L. Smith
By _____
Andrea L. Smith, Of Counsel
Federal Bar #:  00397
404 E. Pratt Street, Ninth Floor
Baltimore, Maryland 21201
Phone (410-385-2555)
Email:  Asmith@silvermanthompson.com


ETHRIDGE, QUINN, KEMP, ROWEN &
   HARTINGER

/s/Margaret A. Teahan
By_____
Margaret  A. Teahan
Federal Bar #:  20364
100 N. Court Street
Frederick, Maryland 21701
(301) 698-8182

*Attorneys for Charles Austin Jenkins*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of September, 2023, a copy of the foregoing motion was filed via ECF causing copies to be sent to all parties of record.

/s/Andrea L. Smith
_____
Andrea L. Smith