IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| v. | * | CRIMINAL NO: SAG-23-0123 |
| CHARLES A. JENKINS, | * | |
| Defendant. | * | |

…ooo0ooo…

**DEFENDANT JENKINS' SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AND MOTION FOR GRAND JURY MATERIALS**

Defendant Charles A. Jenkins, by and through undersigned counsel, hereby responds to the Court's request for additional information at the hearing on October 19, 2023.

**A. THE GOVERNMENT'S MOTION TO DISMISS.**

The government has filed a Motion to Dismiss paragraph 12e in Count One and the entirety of Count Five. The defendant agrees with this motion as far as it goes. The defendant moves this Court to dismiss the entire Indictment as more fully discussed below.

**B. SUPPLEMENT TO DEFENDANT'S MOTION TO DISMISS.**

1. Preliminary Statement

The defendant has argued that the Indictment filed against him should be dismissed because the statutes charged are constitutionally vague as applied to him. In the motions filed by the defendant on this point, this argument was made generally as to the entire Indictment, and with specific reference to 18 U.S.C. § 922(o) and § 924(a)(1)(A). *ECF 31 & 63*. The comprehensive statutory scheme in the National Firearms Act, which includes these statutes and dozens more, along with hundreds of regulations, *inter alia*, imposes upon FFLs an obligation to know and comply with the statutory scheme. Section 922(o) is the basis of Count

Six, which only charges defendant Krop, and it is/was one of the underlying violations of the conspiracy charged in Count One. *See Indictment, ¶ 12e., ECF 1.* The defendant's argument that this statute, § 922(o), is void for vagueness as applied to Sheriff Jenkins, was precisely because the statutory scheme as it relates to law letters, the subject matter of this prosecution, is confusing, ill-defined, and that a person of ordinary intelligence – who is not an FFL – does not possess the knowledge to avoid running afoul of the law. The statute, 18 U.S.C. § 922(o), established both the ban on the possession and transfer of post-86 machineguns, and the law enforcement exemption. The related CFRs added broad procedural obligations related to the law enforcement exemption. The actual details that a person of ordinary intelligence would need to know in order to avoid running afoul of the law are not in the statute, nor in the related regulations. ATF issued open letters – which are not laws and do not have the force of law - to FFLs across the country. The details, albeit inconsistent and confusing for two decades, are in the open letters. These open letters from ATF were never disseminated to law enforcement until the last one issued in 2023, when frankly, the defendant submits, ATF finally understood they had a problem: A problem of their own creation.

The bottom line is that every remaining count in the Indictment, Counts One through Four, alleges violations of the law directly tied to the law enforcement exemption. Even when § 922(o) is struck from ¶ 12e. in Count One, it is still there. To tell the story of the alleged crime, the requirements described in open letters remain front and center. The balance of the charges do not make sense without the § 922(o) overarching construct. The requirements of § 922(o) pervade the entire Indictment. The constitutional infirmity of § 922(o) applies to the entire Indictment despite the removal of ¶ 12e. The defendant asks the Court to apply the same

logic that originally exposed the problem with paragraph 12e. to the other allegations in the Indictment.[1]

## 2. Counts Two and Four.

The statutes charged in these two counts are:

Count Two: Title 18 U.S.C. § 922(a)(6) makes it unlawful in connection with the acquisition or attempted acquisition of a firearm to **knowingly** make any false or fictitious oral or written statement **intended to deceive** an importer or manufacturer with respect to any fact **material** to the lawfulness of the acquisition. This statute has been alleged as an underlying violation of the conspiracy alleged in Count One. *See Indictment, ¶ 12b.* It is also the basis for Count Two.

- Count Four: Title 18 U.S.C. § 1001 makes it a crime to **knowingly and willfully** make a **materially** false, fictitious, or fraudulent statement or representation, again in this instance, with respect to the acquisition of a firearm. *See Indictment, ¶ 12d.* It is also the basis for Count Four.

It is not just that there is (allegedly) a "false statement" in these letters. Both statutes, one in Count Two and one in Count Four, expressly require not only that the falsehood be ***material***, but Count Two expressly requires an ***intent to deceive.*** With reference to Count Four, it also requires an ***intent to do something the law forbids*** based upon instruction from the Department of Justice. In summary,

- 18 U.S.C. § 922(a)(6) expressly requires "knowingly," "material," and an "intent to deceive."

- 18 U.S.C. § 1001 expressly requires "knowingly," "willfully" and "material."

- With specific reference to Title 18, U.S.C. § 1001, the Department of Justice states that for a false statement to be criminal (1) the act or statement must

---

[1] Following the October motions hearing, the government moved to dismiss paragraph 12e. (*ECF 92*.) While the defendant's argument relative to ¶ 12e. is now moot, the defendant submits that the entire Indictment still depends on the framework of § 922(o). The government's Motion to Dismiss did not state why the government moved to dismiss paragraph 12e. The same Motion to Dismiss filed by the government also removed Count 5 from the Indictment, which suffered from a different problem. *ECF 92.*

> be *material*, (2) within the jurisdiction of the United States, and (3) was done "**knowingly**" and "**willfully**." *See Justice.gov, § 908. Elements of 18 U.S.C. § 1001.* DOJ also instructs "that the false statement, concealment or cover up be '**knowingly and willfully**' done, which means that [t]he statement must have been made with an *intent to deceive*… An act is done '*willfully*' if done voluntarily and intentionally and **with the specific intent to do something the law forbids**." (Emphasis added.) *See Justice.gov, § 910. Knowingly and Willfully.*

For all practical purposes, these statutes are interchangeable.

      The logic that applies to the dismissal of 18 U.S.C. § 922(o), applies equally to the statutes charged in Counts Two and Four, and by extension to paragraphs 12b. and 12d. in Count One. The defendant submits that in the context of this Indictment, the "specific intent to do something the law forbids" relates generally to the overarching National Firearms Act statutory scheme, and specifically to the exemption from the machine gun ban in § 922(o). Therefore, an "intent to do something the law forbids," requires knowledge of the statutory and regulatory scheme surrounding the law enforcement exemption to the ban on the possession and transfer of post-86 machine guns. But as shown with reference to the argument the defendant has previously made, knowledge of the statute and the regulations are just not enough. Sheriff Jenkins has no reason to know and is not legally obligated to know that a law letter had any significance whatsoever. It is unthinkable that without meaningful knowledge, the ministerial act of signing a letter turns into a felony violation of the National Firearms Act. The defendant argued – we submit successfully – that the statute, 18 U.S.C. § 922(o), was void for vagueness as applied to Sheriff Jenkins because that statute only states the ban and the two exemptions, without more. The CFR's added a little more information, but certainly not enough to give ordinary people fair notice of what is proscribed." It was only the open letters issued by ATF that began to describe the actual requirements to apply the exemption from the ban. These letters were sent only to FFLs prior to 2022. It was only the open letter sent out in 2023 - a belated

repair effort - that more fully and finally and accurately provided sufficient information that a person of ordinary intelligence would have fair notice of what the law forbids. However, these open letters from ATF have no legal force, and by 2023, when Sheriff Jenkins *might* have received the information from ATF, not only was he already under investigation, the acts for which he is being prosecuted preceded that 2023 disclosure.

Beginning in 2011, (when Sheriff Jenkins signed a letter for a local FFL, Ray Casteline,) when Jenkins could not possibly know and therefore, was unable to "intend to do something the law forbids," the ATF (1) approved deficient letter after letter, (2) never notified Sheriff Jenkins whether his request was approved or denied, and (3) communicated about these letters directly with the FFL but never with Sheriff Jenkins.² Counts Two and Four allege a violation of law that occurred on April 10, 2018. By that date, ATF had communicated only by their silence their acquiescence to the letters previously (and allegedly) signed by Sheriff Jenkins. When could he have ever formed the intent to do something the law forbids? The law failed to inform him about that law that he is being accused of having an intent to violate. This is fundamentally fatal.

---

² Moreover, there is no statute that requires a demonstration nor that provides any information about how or when a demonstration would take place. Defendant's counsel can find neither statutory nor regulatory law that defines what, exactly, a "demonstration" means within the context of this prosecution. The vagueness of the term "demonstration" itself, and the absence of any legal definition of this term is extremely troubling. It is a subjective term. Moreover, how can the government insist that Sheriff Jenkins committed a crime by not demanding a "demonstration" of the firearms that are the subject of the law letters, and for which he had no knowledge if the firearms were actually obtained by Krop, when the government has failed to point to **any** authority as to what a "demonstration" means? Ironically, the law neither requires that the law enforcement agency actually purchase the firearms nor that the FFL return the firearms if the agency does not purchase them.

This point takes us back to § 922(o) which is undeniably and unavoidably the all-encompassing framework for each and every other charge in the Indictment. **Knowledge** of the statutory scheme is the underlying legal element to every single count charged. To form the intent to deceive, a person needs knowledge not only of what is deceptive, but what is *material*. Without understanding the secret laws about law letters, there is certainly no way to know what is *material* to the National Firearms Act scheme. If the secret statutory scheme required that all law enforcement requests for firearms must be in a letter dated on a Tuesday, then the day of the week becomes *material.* This is not meant to be funny – the point is – what is *material* is in the mind of the knower, and not in the mind of someone who does not know and does not have a legal obligation to know. To require otherwise is unfair and unconstitutional because it is too vague.

The government has argued in its motions and in open court that the request for a demonstration, or even just the mention of the word "demonstration" is *material.* When the Court challenged this notion at the October motions hearing suggesting that the basis of a law letter, and hence what would be *material*, is that the writer is a potential purchaser, the government pushed back insisting that they infer the status of the writer as a potential purchaser by virtue of the request for a demonstration, or merely if the letter even contains the word "demonstration." The government has repeatedly argued that the request for a demonstration – in and of itself - makes the requester into a potential purchaser. Clearly, the government believed this when they brought Count Five, just because the word "demonstration" appeared in that alleged law letter. The government thus argues this even when the alleged letter expressly states that the agency has no interest in a purchase. Point in fact, Count One, the conspiracy count, at ¶ 19b., identifies a letter dated October 8, 2015, as the basis for an overt act. Suspiciously the

government left out of the Indictment the recitation in that letter where it says the Frederick County Sheriff's Office has *no* interest in a purchase. Giving the government the benefit of the doubt, we will assume for this discussion that the government genuinely did not understand that what was *material* was the status of the writer as a potential purchaser and not just the inclusion in the letter of the magic word "demonstration." (If the government was not genuinely confused, this is worse and a different discussion.) If the government cannot even accurately identify what part of the letters are the *material* falsehoods, how is anyone else supposed to *knowingly* violate the law? How is anyone else supposed to ***willfully act with an intent to do what the law forbids***? If this Court agrees that § 922(o) is unconstitutionally vague as applied to Sheriff Jenkins, the charges in Count Two and Count Four must fall for the very same reasons. This should not be a question left for a jury to decide. It is not a factual question of whether Sheriff Jenkins had the intent required for a conviction under these statutes. This is a legal question of whether this law can be applied fairly at all to Sheriff Jenkins.

3. Count Three.

Title 18 U.S.C. § 924(a)(1)(A) makes it illegal to *knowingly* make a false statement or representation with respect to the information ***required to be maintained in the records of a Federal Firearms Licensee***. This statute has been alleged as an underlying violation of the conspiracy described in Count One. *See Indictment, ¶ 12c. ECF 1.* It is also the basis for Count Three. This is a specific intent crime that is again linked to specific knowledge. For the very reason that 18 U.S.C. § 922(o) is void for vagueness, § 924(a)(1)(A) is likewise infirm. The defendant addressed this argument in his Reply to the Government's Response to Defendant's Motion to Dismiss, ECF 63, at pages 7 – 9. In summary, Count Three (and ¶ 12c. in Count One) alleges that Sheriff Jenkins knowingly made a false statement with respect to

information *required by law to be kept in the records of an FFL*. Counsel's research reflected that this statute has been used against three very specific groups of defendants: (1) against FFLs who by law are required to know what must be kept in their own records and who have failed to do so; (2) against persons who are attempting to obtain their Federal Firearms License and lie on their applications in the process; and (3) against straw purchasers of firearms. The first and second group would know what the law requires to be kept in the records of an FFL. The only reason this third group can be included in this group is because when any person purchases a firearm, they swear or affirm under oath that they are the real purchaser of the firearm. If it turns out the signer/purchaser is a strawman, it is a **knowing** and **willful** violation of § 924(a)(1)(A).

This third group of defendants, straw purchasers, is only charged with knowledge by virtue of the printed words on the form they must sign in order to purchase the firearm. *See Firearms Transaction Record, Form 4473 p.2,* attached as Exhibit A. Upon reading the warning, they are explicitly informed and have knowledge. Upon signing, they act willfully. There is no reason that anyone else – outside of these three categories of defendants - would know or understand what **information is required to be maintained in the records of an FFL**. Moreover, to tell the story of the alleged crime, the violation of 18 U.S.C. § 922(o) again becomes relevant and must be explained to the jury. All of the counts are entwined and cannot be separated by striking the reference to the one statute, § 922(o), from a single paragraph in Count One. As applied to Sheriff Jenkins, the same logic supports the dismissal of Count Three.

For the government to overcome this constitutional deficit and apply it to Sheriff Jenkins, the government would need to prove that he **actually knew** what information was required to be maintained in the records of an FFL. It bears repeating, Sheriff Jenkins not only

8

has no reason to know this information, he is also not under any legal obligation to know this information. This should not be a question of fact for a jury. What Sheriff Jenkins knew is strictly a question of law for the Court since this statute at its root imposes knowledge on certain groups of people. Being an FFL holder is a privilege not a right: This is true of all license holders. There is no rest that the government grant you an accommodation that is subject to administrative and regulatory oversight, you inherently submit to the authority of administrative and regulatory law. There are many licenses that Sheriff Jenkins does not have: He is not a licensed barber, he is not a licensed attorney, and he is not a licensed physician with the authority to prescribe controlled dangerous substances for medicinal purposes. Obviously, this is not an exhaustive list. Does the government also impute him with knowledge of the administrative law in these areas? It is a ridiculous proposition but an appropriate analogy to make.

   Sheriff Jenkins was not an FFL holder at the time of these allegations. How does Sheriff Jenkins, or any other person not in one of the above three categories be convicted of violating its dictates? These are not strict liability crimes. They are specific intent crimes. Section 924(a) fails to give notice of the act that is a violation of this statute to anyone other than an FFL or aspirant FFL. Again, it is because the FFL – by requesting and being granted a license – has submitted to regulatory authority that the FFL holder is imputed with knowledge of the regulatory scheme. That is why there is only a limited population that has been charged with this statute. Beyond those three groups, it is constitutionally vague. Count Three should be dismissed from the indictment and by extension, paragraph 12c. in Count One should also be removed. A prosecution under these circumstances is fundamentally unfair.

Finally, despite the removal of ¶ 12e. from Count One, as the government has moved to do, the overarching framework of § 922(o) pervades not only Count One, but the entire Indictment. The story of this alleged crime cannot be explained to the jury without a deep dive into the National Firearms Act generally, and § 922(o) specifically. The foundation of this entire prosecution is the ban and the exemption described – albeit inadequately – in that statutory provision. But for § 922(o), Counts Two, Three and Four do not exist. But for § 922(o), Count One does not exist. But for § 922(o), this Indictment does not exist. Removing the reference to § 922(o) from Count One is just not enough. If this Court believes that § 922(o), as applied to Sheriff Jenkins, is constitutionally infirm, then the entire Indictment should be dismissed.

C. **SUPPLEMENT TO DEFENDANT'S MOTION FOR GRAND JURY TESTIMONY AND GRAND JURY MINUTES.[3]**

The history of grand juries goes back centuries. By the seventeenth century the role of the grand jury was as "a protector of the citizenry against arbitrary prosecution." *Nixon v. Sirica*, 487 F.2d 700, 789 (D.C. Cir. 1973).

> "English and colonial grand jurors could easily understand the common law crimes of murder, robbery, rape and arson, offenses for which they usually indicted defendants. Modern grand jurors, however, are confronted with a plethora of complex federal statutory crimes. Usually lacking any legal training, modern grand jurors must often make determinations of probable cause in cases such as income tax evasion, mail and wire fraud, and violations of the Hobbs Act, the Extortionate Credit Transaction Act, the Racketeer Influenced Corrupt Organizations Act (RICO), the Travel Act, and the antitrust laws. Thus, the modern grand jury has become more passive, coming to rely more heavily upon the prosecutor. Such dependency has eroded the grand jury's ability to be 'independent and informed' making it vulnerable to prosecutorial manipulation. To remedy this problem, some federal courts have exercised their inherent supervisory power to curb prosecutorial abuse and to ensure the integrity of the grand jury process."

---

[3] In an effort to not repeat the arguments already made by the defendant in his earlier motions for grand jury materials, the defendant asks this Court to review his motion and his reply to the government's response. *ECF 62 & 75.*

[Citations Omitted.] *Preserving the Autonomy and Function of the Grand Jury: United States v. Williams*, Catholic University Law Review, Vol 43, Article 9, 1993.  The National Firearms Act belongs in that list of complex modern statutory crimes.  As a preliminary matter, Assistant United States Attorneys appear before a grand jury.  When a witness appears, that witness is sworn and provides testimony in response to questions by the AUSA. It is assumed, but not guaranteed, that the questions are fair and unbiased.  Sometimes a grand juror will ask a witness a question as part of their testimony.  That testimony is transcribed and if that witness appears at trial, the defendant has every belief that they will get that transcript.  Sometimes, in between witnesses, a grand juror might have a question.  AUSAs can answer questions posed by the grand jury, and all conversation between AUSAs and the grand jury when a witness is not in the room is recorded, but not necessarily transcribed.  The recording, or a transcript of the recording is typically never turned over to the defense.   AUSAs, if they are careful, only allow witnesses to answer questions of fact.  If a grand juror asked a witness a question that was related to the law, an AUSA, if they are careful, will tell the grand juror that the AUSA will answer the question once the witness has left the chamber.  While the government has insisted that it did not give the grand jury any instructions about the law, the elements of the crimes charged, nor how the facts supported those elements, that does not address our issue.  The issue arises about how questions were asked of the witnesses, how the AUSAs answered jurors' questions, and how the grand jury responded to the obvious flaws in the Indictment that are addressed below.  Because of these issues in the Indictment - restated below - the defendant submits there is reason for this Court to review the grand jury testimony and the minutes.

The defendant submits that all parties agree with the following assertions:

- That Rule 6(e)(3)(E)(ii) authorizes the Court to invade the secrecy of the grand jury "when grounds exist to dismiss the Indictment because of a matter that occurred before the grand jury."

- That the defendant bears the burden of showing a "*particularized need*" based on facts and not mere speculation.

- That showing is (1) when the information is sought in order "to avoid a possible injustice," (2) when the need for disclosure outweighs the need for continued secrecy, and (3) when the request is limited to only that information which is needed to accomplish the goal of avoiding a possible injustice.

Where the parties disagree is whether the defendant has shown a particularized need based upon facts. The facts that justify this request by the defendant have become apparent at this stage of the litigation and are based upon the actual Indictment, the government's assertions in their motions, their dismissal of ¶ 12e. and Count Five, and their statements in open court. "[T]he remedy of dismissal of the Indictment is appropriate if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt as to whether it had such effect." *United State v. Mechanik*, 475 U.S. 66, 78 (1986). A violation of this nature is constitutional in that it deprives a defendant of his Fifth Amendment right to Indictment by a grand jury.

First, ¶ 7 in Count One, the conspiracy count in the Indictment, states that the exemption from the post-86 machinegun ban allows the transfer of firearms "to potential law enforcement or military purchasers." *Indictment, ¶ 7 ECF 1*. As discussed above, this is the ***material*** fact or gravamen of the crime – to pretend to be a purchaser. Yet, also in Count One, at ¶ 19b, the Indictment describes a letter dated October 8, 2015, and declares it an overt act. This October 2015 letter is one page in length, has six sentences and a table listing firearms. The description of this letter in the Indictment fails to include the very sentence where it specifically

says the letter "is not indicative of any interest by the Frederick County Sheriff's Office to procure firearms." *Indictment, ¶ 19b ECF 1*. While the prosecution does not have to present exculpatory information to a grand jury, dissecting the evidence to make it support their theory is not just the act of merely not mentioning exculpatory evidence. It is improper whether deliberately done or not. The government left this key passage out of the Indictment. This is not mere speculation. This is a fact. If the ***material*** falsehood is pretending to be a potential purchaser, how was this letter explained to the grand jury? If a grand juror asked that obvious question, how was it answered by the government or even by its witness who was on the stand at the time? This is an internal contradiction in the Indictment and is legitimately concerning. We also know that the government's position has been that the mere mention of the word "demonstration" is all that is required to show that the writer was pretending to be a potential purchaser. That is what the government has told the Court, that is what they have argued in their motions, and if that is what they told the grand jury, then this is very much a problem. It is reasonable to believe that incorrect information about the law, even if doled out answer by answer to questions from grand jurors instead as instructions at the end of the presentation, "substantially influenced the grand jury's decision to indict." *Id. Mechanik.* The government has maintained in their filings with the Court that all five letters expressed an interest in a purchase. This Court knows that is not true. One of those five letters was the one contained in Count Five which the government has now moved to dismiss. This is not speculation. These are the facts that are on the record in this case. At the very least, this justifies an *in camera* review of the grand jury materials by the Court. If the government told the grand jury the same thing that it has told this Court, that all five letters expressed an interest in a purchase while neglecting, to put

it kindly, to point out the second sentence in the October 2015 letter, then this Indictment must be dismissed.

Another not speculative concern is in ¶ 14 of the Indictment. *Indictment, ¶ 14, ECF 1.* This is the recitation of the three emails between Sheriff Jenkins and Isaac Burrell, an employee at TMGN. The problem with the inclusion of these emails is very simple. It is a communication between Sheriff Jenkins and a person not charged as a co-conspirator and not identified as an unindicted co-conspirator. The Indictment also does not allege that this offer came from Robert Krop, the only other conspirator in this case. Innuendo is improper. The only purpose for this evidence, was to improperly imply a motive of political gain when the government knew or should have known before they indicted Sheriff Jenkins that there was nothing there. In light of the improper nature of this evidence, and the repeated emphasis on it by the government in their filings, it is legitimate to ask why and how it was even presented to the grand jury. It is appropriate for this Court to review the grand jury materials to understand how this happened.

Then there is Count Five, which the government has now moved to dismiss from the Indictment. They came to this decision a week or two after the October motions hearing where they insisted – without any foundation - that the March 2022 letter (the Havre-de-Grace firearms) was a request for a demonstration for Sheriff Jenkins and that he was pretending to be a potential purchaser. The fact that the Count will no longer be put before the *petit* jury does not address the core issue in this motion. The defendant is mystified how the March 2022 letter became part of this Indictment. It is disturbing that the government could get that Count so wrong. It is just as disturbing that the grand jury returned Count Five at all. It brings to mind something about indicting a ham sandwich which is of little comfort to Sheriff Jenkins. It

harkens back to the quote from the Catholic University Law Review cited above. The government has insisted that all five letters express an interest in a purchase, and that the mere mention of the word "demonstration" was sufficient to prove that. Once again, Count Five contradicts the government's statement in ¶ 7 of the Indictment. How did the government get this Count past the grand jury? What could they have possibly told the grand jury to convince them that this letter was the gravamen of a crime? This is not speculation. It is a fact that Count Five was returned by the grand jury. It is more than reasonable to believe that incorrect information about the law "substantially influenced the grand jury's decision to indict." *Id. Mechanik*.

Finally, the defendant must ask why instead of simply deciding to dismiss ¶ 12e. in Count One of the Indictment, and Count Five, the government thought it was a good idea to go before an entirely new grand jury and ask for the return of a new Indictment leaving out ¶ 12e. and Count Five. Without saying more, the defendant submits it is a logical conclusion that by that contemplated action the government appears to be attempting to protect the grand jury testimony and minutes from the original Indictment from review by the Court or the defense. It is the cumulation of these issues that the defendant submits justifies the *in camera* review by this Court.

### D. CONCLUSION.

WHEREFORE, Sheriff Jenkins respectfully asks this Court to dismiss this Indictment with prejudice, and in the alternative to conduct a review the grand jury materials *in camera* so that justice may prevail.

Respectfully submitted,

SILVERMAN/THOMPSON/SLUTKIN/WHITE

/s/Andrea L. Smith
By _____
Andrea L. Smith, Of Counsel
Federal Bar #: 00397
404 E. Pratt Street, Ninth Floor
Baltimore, Maryland 21201
(410) 385-2555
Email: Asmith@silvermanthompson.com

*Attorneys for Charles A. Jenkins, Defendant*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November, 2023, a copy of Defendant Jenkins' Supplemental Memorandum in Support of Motion to Dismiss and Motion for Grand Jury Materials was filed via ECF causing copies to be sent to all parties of record.

/s/
_____
Andrea L. Smith